MONGET
*v.*
PENNY.

---

## ELIZABETH and MARY JANE SHIELDS *v.* RAMON LAFON.

The retrocession, by the surviving spouse, of property purchased during the community, will, if necessary on account of the debts of the community, be valid. The failure of the heirs to show that there is property to satisfy the debts, raises the presumption that the retrocession was not a volunrary act, but *ex causa necessaria*.

The heirs of the deceased spouse cannot annul an act of retrocession, made by the survivor for the purpose of paying the debts of the community, without tendering the price of the property, and the interest due on it, up to the day of the retrocession.

APPEAL from the District Court of East Baton Rouge, *Burk*, J. *Samuel P. Greves*, for plaintiffs. *George S. Lacey*, for defendant. *A. M. Dunn*, for *Nephler*, warrantor. By the court:

ROST, J. During the existence of the community between the plaintiffs' father and mother, their father purchased from *Francis Nephler*, several lots and the improvements thereon, for the price of $4048, for which the purchaser gave his four prommissory notes of $1012 each, secured by mortgage, and payable respectively in 1, 2, 3 and 4 years, from the 9th day of January, 1830.

The plaintiffs' mother died in 1833. No steps were taken to open or settle her succession, and on the 17th April, 1834, their father having disposed of some of the lots and accounted for the proceeds thereof to *Nephler*, and the remaining lots being still entirely unpaid, he went before a notary, and, in consideration of the notes he had given, and of the interest which had accrued upon them, made to his vendor, who accepted it, a retrocession of the property. The defendant holds the lot in controversy under this retrocession.

The plaintiffs, in right of their mother, set up title to one undivided half of the lot, on the ground that the title vested in them at the death of their mother, and that they have never been legally divested of it.

It is in evidence that, at the death of the wife, the community owed many debts, and the plaintiffs have failed to show property to a sufficient amount to satisfy them. This forces upon us the conclusion, that the retrocession to *Nephler* was not a voluntary act, but was made *ex causa necessaria*, and on account of the utter inability of the community to pay the price. Under the rule laid down in the case of *Chretien* v. *Richardson*, such a retrocession, when made between proper parties, has all the effects of a judgment decreeing a resolution of the sale for the non-payment of the price. 6th Ann. 2.

The property in this case would have returned to *Nephler* free from any mortgage or claim of the wife, if the retrocession had been made in her life time, the retrocession being inevitable if the vendor required it. The plaintiffs sustained no injury in consequence of the form in which it was made. If the father had been confirmed as natural tutor, and had made it, in that capacity, for the minor's share, with a view to avoid the expense of litigation, we would undoubtedly have sustained it as an advantageous compromise, involving no

SHIELDS
*v.*
LAYON.

alienation of the minor's property.   And as he who, without being a tutor, undertakes to manage the property of minors, subjects himself to all the liabilities of the tutorship, there seems to be no reason why acts done by him while thus acting, of which the minors have derived the full benefit, should not also be binding upon them, when third persons have acquired rights under those acts ; however this may be, the plaintiffs have not tendered the price of the land, and the interest due on it, up to the day of the retrocession.   This is sufficient to defeat their claim.

Judgment affirmed, with costs.