## No. 4600.

SUCCESSION OF JESSE C. PATRICK. Application of L. L. BUTLER, Executor, for sale of property to pay debts.—Intervention of JOSEPH C. GOODRICH, creditor.

Where a judgment creditor with special mortgage and vendor's privilege caused a *fi. fa.* to be issued by the district court against the property of a succession, which *fi. fa.* was injoined by the executor of said succession, and where, whilst the injunction was pending said executor applied to the parish court for the sale of all the property of the succession, including the property involved in the injunction for the purpose of paying the debts of the succession, and the court refused to order the sale of the property on the ground that it was in the jurisdiction of the district court for the time being, by virtue of the seizure and custody of the sheriff, pursuant to its writ;

Held—That the court erred in not granting the order prayed for by the executor. Succession property can not be sold under a *fi. fa.* The executor was in possession of the property when seized, and the probate court had jurisdiction to order the sale.

The creditor had a mortgage on the property, but he saw fit to pursue the *via ordinaria*, and having elected that mode of procedure, he could not have been allowed to change it after he had obtained judgment, even if he had attempted to do so, which he has not done.

No injury can result to the judgment creditor by authorizing the sale prayed for by the executor if he has a mortgage superior to other creditors.

APPEAL from the Parish Court, parish of West Baton Rouge. *Lobdell,* J. *H. M. Favrot,* for intervenor and appellee. *Barrow & Pope,* for executor and appellant.

Justices concurring: Ludeling, Taliaferro, Howell, Morgan.

LUDELING, C. J. Mrs. Ursin Soniat had a judgment against the succession of Patrick which she transferred to J. C. Goodrich. He caused a *fi. fa.* to be issued under said judgment, and under it the sheriff seized property of the succession, to sell which an order had previously been petitioned for by the probate court, to enable the executor to pay the debts of the succession. The executor it seems injoined the sale under the judgment of Soniat, and Favrot, the *curator ad hoc,* appointed to represent Goodrich, the transferree of Soniat's judgment, in the injunction suit, filed for Goodrich on intervention opposing the application as far as it sought to sell the property, which had been seized by the sheriff under the said writ. Waiving the question whether a *curator ad hoc* had a right to interfere in any other proceeding or suit than that in which he was appointed to act, we are of the opinion that the court erred in not granting the order prayed for by

the executor to sell the property to pay the debts of the estate. Succession property can not be sold under a *fi. fa.* 1 An. 173.

The executor was in possession of the property, and the probate court had jurisdiction to order the sale. The creditor had a mortgage on the property but he saw fit to pursue the *via ordinaria,* and having elected that mode of procedure he could not have been allowed to change it after he had obtained a judgment, even if he had attempted to do so, which he has not done. 2 La. 547. No injury can result to the judgment creditor if he has a mortgage superior to other creditors, by authorizing the sale by the executor.

It is therefore ordered and adjudged that the judgment of the lower court be amended as follows: It is decreed that the sale of all the property belonging to the succession of Jesse C. Patrick be sold to pay the debts of the succession, according to law. It is further ordered that the intervenor, Goodrich, pay the costs of the intervention and of this appeal.

---

WYLY, J., *dissenting.* Mrs. Ursin Soniat, the holder of certain promissory notes of J. C. Patrick, secured by vendor's privilege and special mortgage, sued in 1867, in the district court of the parish of West Baton Rouge, to obtain judgment and to foreclose the mortgage against the succession.

After a protracted litigation there was a foreclosure of the mortgage ordered against the land described in the act, and a personal judgment for half the amount of the demand, the other half being held to be not reversable in consequence of its slave consideration. Mrs. Soniat subsequently transferred this judgment to J. C. Goodrich, who caused execution to issue against the hypothecated property.

The executrix of Patrick injoined the sale in the district court, and before the trial thereof applied to the parish court for the sale of all the property of the succession, including the property involved in the injunction suit, against which the mortgage had been foreclosed as aforesaid.

The curator, representing Goodrich, intervened on the following grounds:

*First*—That two courts can not at the same time have jurisdiction of the same property, and until the injunction is tried in the district court the property should remain in the custody of the sheriff, its executive officer; that the sheriff, as excutive officer of the district court, ought not to be placed in a position where obedience to its orders would be disobedience and contempt to the mandate of the parish court.

*Second*—That the holder of a mortgage importing a confession of judgment can subject the property to its payment, regardless of the

manner of foreclosure, and whether the mortgageor be dead or not. The court refused to order the sale of the property on the ground that it was in the jurisdiction of the district court for the time being, by virtue of the seizure and custody of the sheriff, pursuant to its writ. 12 An. 591.   The executrix of J. C. Patrick has appealed.

The question whether a mortgageor who forecloses his mortgage *via ordinaria* can proceed directly against the property without resorting to the remedy provided in articles 990 and 991, C. P., is raised in the injunction suit pending in the district court.

In my opinion the property being under seizure in that court under its own process, and injoined by the executrix on the grounds stated, ought not to be ordered to be sold by the parish court pending that controversy; and the parish judge did not err in refusing to grant the order.   The parish court ought not by its own orders to disturb the jurisdiction of the district court, and in a case like this undertake to dispose of a controversy pending in that court.   I adopt the written opinion of the judge *a quo* on this point.

But laying out of view the question of the jurisdiction of the parish court, I am of opinion that the district court had jurisdiction to enforce, by its own process, the mortgage foreclosed *via ordinaria* against the property in possession of the executrix of Patrick.   A creditor having an executory title may subject the property to the payment of the mortgage whether it be foreclosed *via ordinaria* or *via executiva*.   The right to subject the property to the payment of a mortgage importing a confession of judgment, is not a conditional but an absolute right, resulting from articles 61, 62, 63, 65 and 66, C. P., and articles 1421, 1433 and 1438 of the Revised Code.

The law gives the right to a creditor holding an executory title "to seize and sell the hypothecated property (in possession of the heirs) the same as if the original debtor were alive," C. P. 66; and there is nothing in it declaring that this right shall be forfeited if the mortgage be closed *via ordinaria* instead of *via executiva*.   I imagine that a right accorded by law will not be lost if the owner thereof seeks to enforce it by either of the modes provided by law.

The subject of the articles referred to is the giving of the right, and not the mere machinery by which that right may be enforced.   It was upon the principle that the hypothecary action is a real action following the property in whosesoever hands it may be found, and being a real action it may be brought in a court of ordinary jurisdiction; that this court decided as early as 1846 that a creditor having a special mortgage importing a confession of judgment may obtain in a court of ordinary jurisdiction an order of seizure and sale against the hypothecated property under administration.

This was the doctrine announced in Boquille, administrator, *v.*

Faille. 1 An. 205. In that case this court said: "It is true that, as a general rule, probate courts have exclusive jurisdiction of money demands against successions, but the rule is not without exceptions. C. P. 996, 983. The right of the hypothecary creditor to proceed against the mortgaged property in the possession of the debtor's heirs appears to be beyond controversy. The Code of Practice after declaring the hypothecary action is a real action, which follows the property to which it is attached in whatever hands it may be found, provides that if the debtor has died leaving a single heir who has accepted the succession, or if he leaves several heirs who have accepted the succession, and there has been no partition among them, the creditor shall be entitled to seize and sell the hypothecated property in the same manner as if the original debtor were still alive. Being a real action it may be exercised in courts of ordinary jurisdiction." C. P. 983, 61, 67, 734, 744; C. C. 1370, 1382, 1387, 1391.

Since 1846 this court has frequently affirmed this doctrine. 2 An. 509; 12 An. 551; 19 An. 510; 20 An. 374; but these cases were all under executory process.

The only case where the question was presented in a proceeding *via ordinaria* is that of Randolph *v.* Heirs of Chapman, 21 An. 486, where it was held that: "The holder of promissory notes secured by mortgage on real estate importing a confession of judgment, may proceed *in rem* after the mortgageor has died, to foreclose the mortgage without provoking the appointment of an administrator to represent the succession. Where the act of mortgage imports a confession of judgment and no partition of the estate has been made among the heirs, the mortgage creditor may seize and sell the hypothecated property as if the original debtor were still alive. If the widow and heirs of the deceased husband, whose property is specially mortgaged be non-residents, the mortgage creditor in a suit against the mortgaged property may provoke the appointment of a curator *ad hoc* to represent them."

It is the character of the instrument and not the mode of enforcing it that gives the "executory title against the debtor," and authorizes the creditor, under article 66, C. P., to "seize and sell the hypothecated property (in possession of the heirs in the same manner) as if the original debtor were still alive."

A mortgage retains its hypothecary character as thoroughly when it is foreclosed *via ordinaria* as *via executiva*. It is directed against the thing as much in one form of procedure as in the other; and in this respect it is as much a real action in the one case as in the other.

If article 66, C. P., means what it says, and such has been affirmed repeatedly by this court, the death of the mortgage debtor in no manner affects the right of the mortgage creditor, because he can "seize and sell the hypothecated property (in possession of the heirs in the same

manner) as if the original debtor were alive." Therefore, as Mrs. Soniat could subject, in a proceeding *via ordinaria*, the hypothecated property in Patrick's possession to her special mortgage, she has the same right to do so when the property is in possession of his executrix. It is conceded that she could do so by proceeding *via executiva*; but the cases decided in 3 N. S. 498, 655 and 8 N. S. 96, are cited to show that she can not do so *via ordinaria*. Those cases will be searched in vain to find anything supporting that conclusion.

In those cases the question was whether the hypothecary creditor can at the same time proceed *via executiva* and *via ordinaria*, and the court said : "In the present case an attempt is made to combine two actions, ordinary and extraordinary; and the order of seizure and sale seems to have been granted before the answer was filed. * * * The manner of proceeding attempted by the plaintiffs is not an attempt to cumulate different causes of action in one suit, but to pursue one course of action by claiming the benefit of two remedies for a single wrong which appears to us to be unjust, oppressive, contrary to reason and of course contrary to law." 3 N. S. 498.

In the case at bar two actions have not been combined; but Mrs. Soniat has merely cumulated two different causes of action in one suit, to wit: a personal action against the succession and an hypothecary action against the mortgaged property. So far from violating the principles announced in the decisions opposed to her, Mrs. Soniat has followed their direction.

In the succession of Wilson, 12 An. 592, this court said : "Lastly, it is urged that the notes of the mortgage having been merged in a judgment they become extinguished by novation, though it is admitted that the judgment itself decrees that the mortgage shall remain in force to secure the payment of the judgment. If this doctrine were correct, the highest possible recognition of a right would virtually extinguish it."

Here Mrs. Soniat having the highest possible recognition of her mortgage right, is opposed in the execution thereof, solely on the ground of said recognition. Without this recognition it is admitted the mortgage would entitle her to seize and sell the hypothecated property on an *ex parte* order at chambers.

Now, if the character of her mortgage will authorize the seizure and sale of the hypothecated property on an *ex parte* order of the judge, why will it not authorize the same on an order obtained after a fair trial contradictorily with the mortgageor or his legal representative?'

It is the judicial recognition of the act importing a confession of judgment that authorizes the seizure and sale; and surely that recognition is just as solemn and authoritative when granted contradictorily with the parties as when granted *ex parte*.

But the case of Bertin v. Phillips, 1 An. 173, is cited as authority against the Soniat mortgage.

That case is not in point, and is no authority here. In it the question was, whether an ordinary judgment on a privilege debt could be enforced by the seizing thereunder of a slave belonging to the succession of the judgment debtor; and the court properly held that succession property could not be sold in that way. That case was not based on a special mortgage, importing a confession of judgment, and of course it did not fall under article 61, 62, 63, 65 and 66 C. P. The case of Elmore v. Ventress, 24 An. 382, is directly in point. There the precise question is decided in accordance with the views I herein express. For the reasons stated I feel constrained to dissent in this case.

Rehearing refused.