## No. 751.

### W. W. BENNETT vs. J. W. FULLER.

After the dissolution of the community, the husband, as its former head, has no power to sell, and can convey title to no greater part of the community property than his undivided half-interest in it.

An agreement to sell property for a certain price, on a certain future day, and convey a clear title to it, is not a sale, but a promise to sell; and if the one who so promises fails to fulfill his agreement, he releases the other party to the agreement, and becomes liable for whatever damages his breach of compact has caused the latter.

The tender by one party to a commutative contract to perform his part of it, made long after the time fixed for its performance, is too late to put the other party in default.

APPEAL from the Tenth Judicial District Court, parish of Caddo. Looney, J.

*Nutt & Leonard,* for plaintiff and appellee.

*Hicks & Hicks,* for defendant.

The opinion of the court was delivered by

DEBLANC, J. In November, 1872, plaintiff and defendant entered into the following agreement:

"The undersigned, J. W. Fuller, of Caddo parish, and W. W. Bennett, of Claiborne parish, Louisiana, have this day agreed as follows: Said Fuller agrees to sell to said Bennett and convey by formal title, free from all incumbrances, the dwelling, out-buildings, and improvements, and the grounds whereon they are situated, known as the Graham Place, on Fairfield Avenue Railroad, in the city of Shreveport, fronting upon the avenue and railroad one hundred feet and running back to the east end of said property, of same width perpendicularly to the back line, for which said Bennett agrees to pay on the first of January, 1873, four thousand dollars, *on execution of the title.*

"(Signed)                                    J. W. FULLER,
                                                       W. W. BENNETT."

To what, by this agreement, was defendant bound? To convey to plaintiff, *free from all incumbrances,* a lot of ground and the improve-

ments thereon. When was said property to be so conveyed? On the first of January, 1873.

These were the obligations of defendant's contract. What were those of plaintiff?

To accept and complete the promised sale, and to pay to defendant, on the first of January, 1873, four thousand dollars, the price stipulated between them.

Thus, as to both parties, the term fixed for the performance of their contract was the first of January, 1873.

On that day J. W. Fuller was to execute and tender to W. W. Bennett a title *free from all incumbrances.* Did he comply with his obligation?

On the same day W. W. Bennett was to pay to J. W. Fuller four thousand dollars. Did he pay, and, if he did not, why?

On the first of January, 1873, no title was executed by defendant, no title was tendered by him to plaintiff. He only offered to give what he considered as a good one, and to warrant its validity by personal security.

This did not amount to a compliance with his obligation. Could he, then, have complied with it, and can he now do so?

On the first of January, 1873, there was, and there is now, on the property hereinbefore described, in favor of one Lester, a conventional mortgage amounting, in principal, to $5637 20; and then, as now, the minor, Mary S. Buckner, was and continues to be, by inheritance from her mother, the owner of one *undivided* half of said property.

That mortgage and that adverse title, were the causes, the obstacles, which prevented defendant from complying with his obligation. He could not and did not, on the first of January, 1873, do what he had bound himself to do on that day. His failure to comply with his written promise, constitutes, in law and in fact, a violation of his contract.

With the consent of defendant, indispensable repairs were made to the buildings on the lot, under the instructions and at the costs of plaintiff, and this suit is brought by the latter to compel the former to reimburse the amount of those costs, with legal interest.

The district court allowed plaintiff's demand, and defendant has appealed.

If we had under consideration, instead of a promise to sell and to buy, a sale transmitting a title, or even translative of a title, the argument of defendant's counsel would be unanswerable; but a conditional promise to sell transfers neither the property nor its possession, but only gives, when the condition is fulfilled, a right of action for its performance or for damages. 10 An. 160; 13 An. 361.

It has been held that one who 'acquired from a vendor without title,

has just reason to fear that he shall be disquieted, and may'suspend the payment of the price, unless, before the sale, he was informed of the danger of eviction. It would have been a grave iniquity to hold otherwise, as, here and elsewhere, the sale of property belonging to another is a nullity.

We have been referred to the decision of this court in the case of Julia Williams and husband against J. W. Fuller, reported in the 27 An. p. 634,.in which it was maintained that the surviving husband, as head of the community, may sell its property, after the death of the wife. This is not correct; at the dissolution of the marriage the effects composing the community of gains, are divided into two equal portions, .between the husband and the wife, or between their heirs. R. C. C. 2406.

In the case of Broussard vs. Bernard et al. this court said: " That a community of acquests and gains, as such, continues after the death of one of the partners, with all the legal effects resulting from such a relation, with authority in the husband, if he should survive, to be still regarded as the head of the community, with power to bind the common property by his contracts, and to alienate it without]restraint, is a proposition so repugnant to all our notions of a community, and so subversive of first principles, that it can not be for a moment admitted. Each party is seized of one undivided half of the property composing the mass, and the surviving party can not validly alienate the share not belonging to him." 7 L. R. 222.

In the case of German vs. Gay, this court reaffirmed the plain and indisputable doctrine previously ɛssertcd: "The pretensions of the husband· rest upon the supposition, that he has in law a right to settle and liquidate the community, and that the rights of the wife depend upon such settlement and liquidation, which must be done by and with him alone. If from this he infers that he can sell any of the property, composing the mass of gains of the community, we know not on what law he bases such a pretension. His authority, as head of the community, ceases on the dissolution of the marriage. The right of the heirs of the deceased then attaches," etc. 9 L. R. 584; 1 R. R. 149,378; 10 R. R. 18; 3 An. 562.

Heirs, we admit, should not be permitted to enrich themselves, at the expense of those whose money has or may have contributed to the payment of debts for which they were partly liable. This, for more than thirty years, has been again and again decided by this court.

In the case of Calvit ot al. vs. Mulhollon et al, it said: " Where plaintiffs claim, as heirs of their mother, one half of certain community property sold by the husband after the death of the wife, and the vendee proves that the price of the property was applied to the payment of the debts of the community, he .will be entitled to the reimbursement of

the amount so paid for its benefit, in proportion to plaintiffs' interest in the community." 12 R. R. p. 266.

The decision rendered by our predecessors and reported in the twenty-seventh Annual is based, not only on the ground that the husband may sell community property, after the death of his wife, but on the additional ground that, under such a sale, the purchaser has no right to suspend the payment of the price and rescind the contract, unless actually disturbed in his possession or threatened with eviction. In that construction of the law we do not concur. Where there is no title, there ever was, there is, there hangs a perpetual danger of eviction.

When to one's possession, instead of a presumption of ownership, there is linked the confessed certainty that you are not the owner; that, when transferred by him, the transferred title was not in the vendor, but that it was and still is in another, a different person, what, as to such a vendee, is the value of his possession? Under those circumstances, can the mind be bent to the extravagant credulity, that he has no just reason to fear that he shall be disquieted? Would he be so imprudent as to build a home on land held and detained under such a transfer? If he did, he or his children, after him, might well expect to be expelled from that home.

In 1829, this court was called upon to determine a controversy, which, in only one aspect, differs from this one; it had to consider the effects, not of a promise of sale, but of a sale. The facts are thus stated by Mr. Justice Porter: "The property was purchased by the husband during the life of his wife, and made, of course, a part of the community estate. After her death, he sold it as belonging to himself. The plaintiff insists the one half was owned by the minor children, and the sale by their father, without the formalities of law, did not transfer their title."

"We think the buyer has just reason to fear being disquieted, when he has acquired by a defective title, which does not vest in him a legal right to the property purchased, and that when the title is clearly defective, ho has nothing to do with the considerations that may or may not induce others to sue him. No man would wish to acquire property, or hold it under such contingencies. It is sufficient for the buyer to claim the protection of the law, that he holds at the will of others. It was urged that the vendor was insolvent at the death of his wife, and that the children could not hereafter claim the land without becoming responsible for their mother's share of the debts. Admitting this to be true, who can tell what value the property may acquire before the time of prescription will run against the children?" 7 N. S. 94, 95.

Defendant's counsel contends that plaintiff has accepted delivery, and should be considered as in possession of the premises. This assertion

contradicts the contract. Title, delivery, and possession were to be given at the date fixed in the contract, and that was the first of January, 1873.

Plaintiff was allowed to enter the premises before that date and to take only the possession required to make, or cause to be made the repairs which he thought necessary; but he did not move on the place a single article of his furniture, he did not occupy for a day, a moment, any part of the residence. That possession was limited to a specified purpose, and resulted, not from any clause of the contract, but from the consent of defendant. It lasted until the first of January.

The counsel argue that plaintiff has made no tender of the property, and that, without it, the contract can not be rescinded. There no longer remains a contract to rescind; that which existed between the parties expired on the day it was violated, and plaintiff could not have been expected or compelled to return to defendant that which, legally, never was out of defendant's possession.

His counsel invoke a reasonable presumption; they remind us that Mrs. Buckner married and died during the war; that the husband was rich, the wife poor, and that it is difficult to conclude that the price of the property, twelve thousand five hundred dollars, was acquired during the marriage. There is a higher presumption than that invoked by them. In the sale to Buckner, there is no mention that he bought for him alone and with his own funds; he bought during the marriage, and the acquired title passed to the community.

In deference to counsel, we have carefully examined every authority, every proposition on which they have rested a hope and built their expectations. We now return to the parties, to their contract, their mutual obligations, their written promises, and, by the light of their expressed intentions, we will construe and enforce their contract.

It was violated; of this there is no doubt. By whom was it violated? Plaintiff charges that it was by defendant; defendant charges that it was by plaintiff. Who is wrong, and who is right?

In the document by which their agreement is evidenced, we read: " *Said Fuller agrees to sell to said Bennett, and convey by formal title, free from all incumbrances,*" the lot and buildings. That document was not itself the intended sale, the formal title therein referred to; otherwise, how explain that declaration: " *I agree to sell, to convey by formal title ?*" Would he have bound himself to do what was already done, to give what he had already given? That can not be; that construction can not be imprisoned in that declaration.

There was to be a sale, the title was to be transferred; that was *to be done;* the agreement was not self-acting; there was to be another, a second act, to carry the first into execution. The first contract contained

two conditional obligations: one to sell, the other to buy. When was the second act to be passed, the obligation to be executed? On the first . of January, 1873.

On that day, Bennett went to Fuller, asked him for the promised title, a title free from all incumbrances; on that day Fuller had but a fraction of that title, and that fraction was subject to a mortgage in favor of Lester, amounting, without the stipulated interest, to more than fifty-six hundred dollars, more than the price fixed by himself for the whole of the property he had bound himself to transfer free from all incumbrances.

The tender of the price by plaintiff was irregular, but useless; the first obligation to be executed was that of defendant. Unless the latter presented such a title as had been agreed upon between them, no price was due, none had to be offered by Bennett. On the seventh of May, 1877, Fuller tendered him, in open court, an act translative of the property herein referred to, with the written consent of Lester that he would release his mortgage on said property, if the price fixed in the promise of sale, four thousand dollars, were paid in court for his own use and benefit.

It was too late; more than four years had elapsed since the day fixed for the execution of the title, and the land was still mortgaged; but had said mortgage been erased on the first of January, 1873, that fact alone would have been insufficient to bind the plaintiff. Fuller could not then, · nor can he now, transfer what he and Bennett know to belong to the minor Buckner.

Fuller offered to give security to protect Bennett against the danger of the apprehended eviction. This Bennett refused. It was his right. Fuller was to be, but was not a vendor, and he could not compel one who had not accepted an intended sale, to accept any security, as a protection against the troubles, the disturbance, the losses invariably entailed by the acceptance of a defective title, or of one which has no existence.

This was not one of the conditions of their contract; and, as no condition of that contract was repugnant to law, it became the law of the parties. Reduced to its true proportions, what was the agreement? I bind myself, said Fuller to Bennett, to give you, on the first of January, a title free from all incumbrances. If you do, answered Bennett, I shall, on the same day, accept your title, and then pay you four thousand dollars.

The promised title was not, could not have been given at the date agreed upon, and the violated promise did not grow into a contract of· sale.

From November, 1872, to the first of January, with Fuller's consent, Bennett, relying on the performance of Fuller's obligation, improved

and repaired the uninhabitable premises which he was to buy. He claims, from defendant, not a cent more than he disbursed, and, as those improvements and repairs remain to Fuller and have enhanced the value of his property, he is undoubtedly liable to Bennett for an amount equal to their cost.

Plaintiff's demand is not only a strictly legal, but also a reasonable demand.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.

Mr. Justice Egan recused himself in this case.