## No. 9394.

## JOHN E. LEONARD VS. THE SHERIFF ET AL.

The holder of a conventional mortgage which does not contain the pact "*de non alienando*" cannot reach the mortgaged premises, if it has been subsequently transferred, in the hands of a third possessor, holding the same under color of title, by a direct seizure on a judgment obtained against the original mortgagor. His recourse is exclusively through the hypothecary action proper.

It is no defense to the injunction of the third possessor, to allege the nullity of his titles, unless such nullity is apparent on the face of the papers.

The enforcement of his prior lien must be obtained by means of the hypothecary action. The nullity of the third possessor's title must be presented and can be considered only in a direct action.

APPEAL from the Eighth District Court Parish of East Carroll. *Deloney*, J.

*J. M. Kennedy* for Plaintiff and Appellant.

*J. W. Montgomery* for Defendant and Appellee.

The opinion of the Court was delivered by

POCHÉ, J. Plaintiff alleging his ownership and possession of the "Oakland Plantation," in East Carroll, has enjoined the sale of the undivided half of the same, provoked by John R. Conant in execution of a judgment which he had obtained against J. O. Pierce, Jr., making executory a mortgage granted by the said Pierce on the property seized herein, to secure the payment of certain notes representing part of the purchase price thereof. He appeals from an adverse judgment. A proper understanding of the pleadings will be facilitated by a statement of the following salient facts, which bear on the issues which will be considered in this opinion.

John O. Pierce, Jr. bought the undivided half of this plantation from his father and mother, on the 5th of April, 1871, by a sale under private signature ; and in part payment of the price, he executed the notes now held by Conant.   The act stipulated a mortgage to secure the notes, but it did not contain the pact *de non alienando*, and being a private instrument, it did not import a confession of judgment.

At the instance and on the complaint of certain creditors of J. O. Pierce Senior, the district court subsequently rendered judgment, annulling the sale made by the latter to his son in April, 1871, as having been made in fraud of creditors.   On appeal taken by Pierce Jr. only, that judgment was reversed by this Court.   Currie, King & Co. vs. J. O. Pierce, 27 Ann. 268.

But pending the appeal, which was devolutive only, the judgment of the district court was executed, and at the sale made thereunder, the property seized was adjudicated to J. Edwards Leonard, the son of the present plaintiff.   At that time, the other half of the plantation was owned by Frank M. Hoppin and J. O. Pierce Jr., in equal shares. Soon after his purchase at the sheriff's sale on March 8, 1875, J. Edwards Leonard sold his half of the plantation to F. M. Hoppin, who thus became the owner of three-fourths of the property, in indivision with J. O. Pierce Jr., who owned the other fourth.

On the 19th of June following, the whole property was sold for taxes by the collector, and adjudicated to J. Edwards Leonard, who thus became the purchaser of the whole plantation.

On the 29th of June, 1877, he executed an instrument in which he declared that his purchase of the " Oakland plantation " had been made in behalf and for the account of John E. Leonard, his father, the present plaintiff.   That instrument, after proof as required by law, was inscribed in the proper conveyance office, on May 6, 1878.   All other acts of transfer and conveyance hereinabove referred to were duly inscribed in the proper office.

The suit of John R. Conant, looking to the execution of the mortgage granted by J. O. Pierce Jr., mentioned in the first part of this opinion was filed on the 24th of June, 1877, and ripened into judgment on the 21st of June, 1878.

J. Edwards Leonard, who was alleged to be in " possession of said ' Oakland plantation ' claiming to be the owner thereof," was brought into the suit as a defendant, but on account of an exception interposed by him on the ground that the proceedings were irregular, no judgment was rendered against him.

On the 22nd of July, 1879, Conant brought suit by the hypothecary action, on the same mortgage against F. M. Hoppin, whom he alleged to be then the owner, and in the possession of the mortgaged premises, and he obtained a judgment enforcing his mortgage against the property in question as that of Hoppin.

The execution enjoined was predicated on that and on the judgment previously obtained against Pierce Jr.

Setting up his ownership to the property seized, under the chain of titles which is hereinabove recited, plaintiff contends that his property is not burdened with the mortgage claimed thereon by the defendant Conant; and that such mortgage, if it did exist, could not be enforced against his property otherwise than by the regular hypothecary action brought contradictorily with him, as a third party in possession under color of title.

His action is met by numerous defenses, which substantially deny his alleged titles, and allege the nullity of the sheriff's sale of March 8, 1875, as well as the nullity of the tax sale of June 19, 1875.

Under our views of the issues involved in this case, the question which stands at the threshold of the controversy involves the discussion of the right of plaintiff as a third possessor of mortgaged property to urge and contend that he can only be reached by means of the hypothecary action proper.

He was not a party to either of the judgments sought to be enforced against the property in his possession, and which he claims to own. J. Edwards Leonard, under whose title he holds, and who was in possession in 1877, when suit was filed against Pierce Jr., was not a party to the judgment rendered in that case, and therefore plaintiff cannot be concluded in his legal rights by either of the judgments declared upon by Conant. The latter failed to allege, either in his answer to the present action, or in his petition of July 22, 1879, against Hoppin, how, when and by what rights or acts the latter had acquired either the ownership or the possession of the mortgaged premises, so as to enable him legally to stand in judgment in the hypothecary action then brought against him. He surely cannot mean that Hoppin had acquired either title or possession under his purchase from J. Edwards Leonard, because the main ground of his defense rests on the alleged absolute nullity of the latter's purchase at the sheriff's sale of March 8, 1875. That pretension would be destroyed by the simple effect of his judicial declarations.

Besides, the record shows that soon after his purchase from J. Edwards Leonard, Hoppin was divested of his title by the tax sale of

June 19, 1875, at least as long as that sale is not annulled by a judgment.

The proof is ample in the record that, under the latter sale, J. Edwards Leonard went into undisputed possession of the property, and that his possession, continued in his father since May, 1868, has never been interrupted for a moment. The property has during all that time been continuously leased, and its rents and revenues regularly collected for the one and the other as successor, by the same person as the agent successively of both.

It is plain to the legal mind that, in a pursuit like that followed by the defendant Conant, the main question involves his mortgage rights on the property, and the mode of enforcing the same, and that the validity of the third possessor's title is a question of secondary consideration.

This principle was recognized in the earliest stages of our jurisprudence.

In the case of Richards vs. Nolan, 3 N. S. 336, the same issue was presented and the court held that the mortgage rights could not be exercised directly against the third possessor, on the ground that the latter's purchase was fraudulent and null.

The court said : " The evidence establishes that both vendor and vendee continued to reside on the premises after the sale. In such a case possession follows title. Consequently the defendants could not seize and sell the property as that of the vendor. If they or either of them had a previous lien, they should have proceeded against the plaintiff who stood in relation to them as a third possessor, by the action of mortgage.

" If the sale to the plaintiff was fraudulent, suit should have been brought to set it aside. They could not treat it as a nullity and sell the property as if no alienation had taken place."

This is precisely the course pursued by Conant in this case. And yet it does not lie in his mouth to say that he was ignorant of the alienation which took place from Hoppin and Pierce Jr., to J. Edwards Leonard, under the tax sale of June, 1875, for he is estopped by his own solemn declaration made in his petition of June 29, 1877, in which he makes him a party to the suit, as the party in possession, claiming as owner.

Plaintiff exhibits titles which are translative of property, and are not null on there faces. Their validity cannot be questioned collaterally, and can be determined in a direct action only. Ludeling vs.

McGuire, 35 Ann. 893. As a third possessor under such titles, not under a "clandestine possession," or as a "squatter," as argued by defendant's counsel, he is entitled to be maintained in his possession, until ousted under and by means of proper legal proceedings; either by the hypothecary action proper, or by a direct action of nullity.

We have already shown that his mortgage did not contain the clause. de non alienando, hence he cannot be permitted in law to ignore the subsequent transfers of the mortgaged premises.

It may be that on proper showing, these transfers will be found tainted with fraud, and will be declared null.

On that point we do not and we cannot now express any opinion. Under the pleadings we are compelled to enforce the plain rule of practice, which is clearly laid down in our code, and which has frequently been considered and expounded in the decisions of this Court. Waddill vs. Payne & Harrison, 22 Ann. 134; Taylor vs. Pipes, 24 Ann· 551. (See authorities quoted in the last decision).

We therefore conclude, that plaintiff as third possessor could not be reached otherwise than by the hypothecary action, and that there is error in the judgment of the district judge which dissolved his injunction. The defense, which charged irregularity in the mode of proceeding, should have prevailed, and on that ground, we must maintain the injunction.

For those reasons, it is ordered that the judgment appealed from be annulled, avoided and reversed; and it is ordered and decreed, that the injunction herein sued out by plaintiff be perpetuated, and that his property be released from seizure, costs in both courts be paid by the defendant, John R. Conant.