(73 South. 691)

No. 20507.

SIMPSON v. BULKLEY.

(June 30, 1916. Rehearing Denied Jan. 15, 1917.)

*(Syllabus by the Court.)*

EXECUTION ☞69—HUSBAND AND WIFE ☞273(7)—ADMINISTRATION—JUDGMENT CREDITORS.

As a general rule, a creditor, holding a judgment against the succession of a deceased person under administration, has no right to interfere with the administration by having the property of the succession seized and sold under a writ of fieri facias to satisfy his judgment, but must await a settlement of the succession by the administrator or other succession representative. One of the exceptions to that rule is that a creditor of the community of acquêts and gains, holding a judgment against the community, may proceed against the surviving husband as the head and master of the community, and as the representative of the succession of his deceased wife, by the seizure and sale of the community property, to satisfy the community debt, as well after as before the death of the wife.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 155–158; Dec. Dig. ☞69; Husband and Wife, Cent. Dig. § 1015; Dec. Dig. ☞273(7).]

Appeal from Second Judicial District Court, Parish of Bossier; John N. Sandlin, Judge.

Action between Thomas B. Simpson against Mary E. Bulkley. From a judgment for the latter, the former appeals. Affirmed.

Hall & Jack and J. Henry Shepherd, all of Shreveport, for appellant. Joannes Smith, of Benton, and Hampden Story and Alexander & Wilkinson, all of Shreveport, for appellee.

O'NIELL, J. The wife of William B. Simpson died intestate on the 18th of May, 1892, leaving two minor children, John S. Simpson, and the present plaintiff. In July of that year, William B. Simpson, father of the children, qualified as their natural tutor with power of administration, and letters of tutorship were issued to him accordingly. On the same day, Thomas M. Vaughan, a maternal uncle of the children, was appointed and qualified as their undertutor, and letters were issued to him as such. An inventory of the property of the succession was made, and an abstract thereof was recorded in the mortgage office on the 9th of July, 1892. The only real estate belonging to the succession of Mrs. Simpson consisted of her half interest in certain lands belonging to the community of acquêts and gains theretofore existing between her and her husband, the whole being appraised at $3,280, to which was added certain personal property belonging to the community, appraised at $320, making the total appraisement of the community property $3,600. The tutor was charged with half of the appraised value of the community property, $1,800, and with the value of an insurance policy on the life of Mrs. Simpson, in favor of the minor child, Thomas B. Simpson, as beneficiary, appraised at $2,500. The abstract of inventory, therefore, showed an indebtedness of $4,300, due by the tutor to his minor children; that is, $900 due to John S. Simpson, and $3,400 due to Thomas B. Simpson, the present plaintiff.

On the 22d of August, 1892, William B. Simpson bought a tract of land described as the southwest quarter of section 5 and the north half of section 8, in township 20 north, range 13 west, containing 480 acres.

On the 28th of October, 1892, J. D. Calhoun filed suit against William B. Simpson, individually and as natural tutor of his two minor children, John S. Simpson and the present plaintiff, on a promissory note, representing a debt of the community theretofore existing between William B. Simpson and his wife, for $150, with interest at 8 per cent. per annum from its date, dated the 28th of November, 1889, payable one year after its date. At the foot of the petition was written:

"I hereby acknowledge service of the foregoing petition, waive citation and all copies and for-

malities of citation, etc., October 13, 1892. [Signed] W. B. Simpson, Personally. W. B. Simpson, Tutor T. B. and J. S. Simpson."

On the same day, William B. Simpson, individually and as natural tutor of his minor children, filed an answer in the suit, denying generally all of the allegations of the petition of J. D. Calhoun. Judgment was rendered in favor of the plaintiff, J. D. Calhoun, "and against W. B. Simpson, personally, and W. B. Simpson as tutor for T. B. and J. S. Simpson, his minor children" for $150, with interest at 8 per cent. per annum from the 28th of November, 1889, and all costs of the suit. On the 26th of November, 1892, a writ of fieri facias issued on the judgment in favor of Calhoun, directing the sheriff to seize the property of "W. B. Simpson, personally, and W. B. Simpson as tutor for T. B. and J. S. Simpson, his minor children," under which the sheriff seized the real estate belonging to the community theretofore existing between William B. Simpson and his wife, and also seized the tract of 480 acres in sections 5 and 8, in township 20 north, range 13 west, belonging to William B. Simpson individually. Having been advertised and appraised according to law, all of the land seized was adjudicated to T. M. Vaughan for $2,418.67, two-thirds of its appraised value. The sheriff's return shows that the amount paid Calhoun with interest was $187.50, that the costs amounted to $44.71, and that the sheriff paid to W. B. Simpson the balance of $2,201.46, for which the latter signed a receipt on the writ of fieri facias, individually and as tutor of his minor children, Thomas B. and John S. Simpson, of date the 11th of February, 1893. John S. Simpson died, intestate, unmarried, and without issue, in 1908, leaving as his heirs at law his surviving father, for one-fourth, and his surviving brother, the present plaintiff, for three-fourths.

The tract of 480 acres, in sections 5 and 8, in township 20 north, range 13 west, and a portion of the land that had belonged to the community of acquêts and gains, that had existed between Thomas B. Simpson and his wife, was acquired by Miss Mary E. Bulkley, the defendant in this suit, by mesne conveyances from T. M. Vaughan, who had bought the land at the sheriff's sale in satisfaction of the judgment of J. D. Calhoun.

In 1913, John S. Simpson, having arrived at the age of majority, brought suit against his father for an account of his administration as natural tutor. The account rendered gave credit to the plaintiff for $1,800, representing one-half of the value of the community property. The plaintiff opposed the account, and it was amended by striking out the credit of $1,800 for half of the value of the community property. The tutor was credited with the amount paid on the Calhoun judgment; and the account as approved and homologated showed a balance of $2,267.79 due by William B. Simpson to the present plaintiff.

On the 10th of June, 1913, Thomas B. Simpson filed this petitory action against Miss Mary E. Bulkley to recover an undivided half of the land that had belonged to the community of acquêts and gains between William B. Simpson and his wife, that Miss Bulkley had acquired through mesne conveyances from T. M. Vaughan. He claims an undivided fourth interest in the property by inheritance from his mother, and another undivided fourth interest by inheritance from his brother, John S. Simpson. On a theory which we do not understand, the plaintiff claims that, by the second marriage of his father, the latter forfeited his inheritance of one-fourth of the interest of John S. Simpson, and that it was therefore inherited by the plaintiff. The plaintiff also prays that the defendant be ordered to pay the debt of $2,276.79 due by his father to him, secured by a legal mortgage on the tract of 480 acres in sections

5 and 8, township 20 north, range 13 west, or surrender that property, together with the undivided half of the community property formerly belonging to William B. Simpson, to be sold in satisfaction of the debt secured by the legal mortgage. The only particular allegation of nullity of the sheriff's sale to T. M. Vaughan, in the plaintiff's petition, is that the sale was made without an order of court authorizing the sale of the succession property or property in which minor children were interested.

In her answer to the suit, the defendant admitted the allegations of fact, as to the circumstances under which the sale was made by the sheriff. She denied that the plaintiff or his deceased brother had inherited any portion of the land, alleging that their interest in the community property was only residuary and subject to the payment of community debts. She alleged that the sale by the sheriff in satisfaction of the judgment for a community debt divested the succession of the plaintiff's mother of any and all interest in the community property, and that the sheriff's sale conveyed to T. M. Vaughan an indefeasible title to the property, free from any mortgage. The defendant filed pleas of prescription of one, three, and five years. She also filed a plea of estoppel in defense of the hypothecary action, as to the 480 acres of land in sections 5 and 8, alleging that, as the estate of the plaintiff's mother was liable for the community debt for which the property was sold, her succession and her heirs were bound in warranty to defend the title conveyed by the sale.

The trial of the case on the issues recited above resulted in a judgment in favor of the plaintiff, recognizing and declaring executory his legal mortgage on the 480 acres described as the northwest quarter of section 5 and north half of section 8, in township 20 north, range 13 west, to secure the debt of $2,276.79,

and dismissing the plaintiff's petitory action to recover one half, and his hypothecary action against the other half, of the community property. The plaintiff and defendant both appealed.

The proposition of law announced by the plaintiff's counsel, and relied upon for a reversal of the judgment on the petitory action, is that the undivided half interest of minor children in community property under administration by the surviving father and natural tutor is not subject to seizure and sale under a writ of fieri facias to satisfy a judgment against the community; that the property can only be sold under and by virtue of an order of the probate court in the succession or tutorship proceedings. To emphasize the importance of requiring an order of sale from the probate court in the succession proceedings, the plaintiff's counsel lay much stress upon the fact that 2,906 acres of land were sold for only $2,418.67, to satisfy a debt amounting, with interest, to only $232.21, and that the property was adjudicated to the undertutor of the minor children. He does not contend that these circumstances in themselves would render the sale null if it had been made under and by virtue of an order of court in the succession or tutorship proceedings. Hence the question is clearly presented whether, after the death of the wife, a creditor of the community theretofore existing between her and her surviving husband can legally proceed against the surviving husband individually and as natural tutor of the minor children, obtain a judgment and seize and sell the community property under a writ of fieri facias in satisfaction of the community debt. On this question, counsel for the plaintiff and defendant have each submitted a line of decisions disclosing an apparent conflict in our jurisprudence, which we are called upon to reconcile as far as we can, in this case.

We shall first take up and analyze the decisions cited by counsel for the plaintiff.

In Bertin v. Phillips, 1 La. Ann. 173, it appears that after the death of W. Porter (of whose succession the plaintiff, Bertin, was executor), a slave belonging to the succession was prosecuted in the city court and convicted of a criminal offense. The succession of Porter, as owner of the slave, was condemned by the city court to pay the costs of the prosecution. A writ of fieri facias issued on the judgment for costs; the city marshal seized the slave, and, after the usual advertisement, sold him at public auction to one Fisk, who sold him to the defendant, Mrs. Phillips. Bertin, the executor of the Succession of Porter sued Mrs. Phillips to recover the slave, alleging that the city court was without jurisdiction or authority to order the sale of property belonging to the succession under administration in the probate court. It was held that the sale was null because the city court had no authority to order the slave seized and sold. In addition to the circumstance that the court that issued the writ of fieri facias had no jurisdiction of the succession under administration, there is this important difference between the case cited and the one before us: In the case cited, the debt for which the judgment was rendered and executed against the property of the succession was not contracted during the lifetime of the deceased, but was a debt of the succession that should have been paid in the ordinary course of administration. We quote the following from the opinion:

"The costs which had accrued upon the prosecution constituted a debt due by the succession, and should have been presented to the executor, whose duty it would have been to recognize it, with the privilege established in favor of law charges, and to have paid it as such, in the course of administration."

That decision was cited with approval in Succession of Patrick, 25 La. Ann. 154, 158, and in Levy v. Succession of Lehman, 38 La. Ann. 11.

In the Succession of Patrick, 25 La. Ann. 154, Chief Justice Ludeling, for the majority members of the court (Mr. Justice Wyly dissenting), said:

"Succession property cannot be sold under a fi. fa. Bertin v. Phillips, 1 [La.] Ann. 173."

The decision, however, did not depend upon the doctrine that succession property cannot be sold under a fi. fa. The executor of the Succession of Patrick had obtained an order from the probate court to sell the property to pay the debts of the succession, after which Mrs. Soniat caused the property to be seized under a writ of fieri facias issued on a judgment rendered against the succession. The executor obtained an injunction to prevent the sale under the judgment of Mrs. Soniat. The curator ad hoc of the transferee of the judgment rendered in favor of Mrs. Soniat opposed the sale which the executor was proceeding to make under the orders of the probate court. It was held that the property should have been sold under the orders of the probate court, which had taken jurisdiction of the property before the writ of fieri facias issued.

In Hall & Lisle v. Belden, 29 La. Ann. 118, the plaintiff obtained a judgment against the defendant, Belden, with recognition of a mortgage and vendor's lien on a house and lot, and seized the property and advertised it for sale under a writ of fieri facias. The defendant died before the date on which property was to be sold, and his succession was regularly opened. The plaintiffs caused notice of their proceedings to be served upon the succession representatives, and the sheriff proceeded with the sale, adjudicating the property to the plaintiffs. The court, through Mr. Justice Egan, held that the death of the debtor stayed all proceedings for the forced alienation of his property (citing Legendre v. McDonough, 6 Mart. [N. S.] 513), and that

succession property could not be seized and sold under a writ of fieri facias, although it might be seized and sold in proceedings via executiva.

The expression of Mr. Justice Martin in Legendre v. McDonough, 6 Mart. (N. S.) 513, that "when a defendant dies, a judgment rendered against him must be declared executory against his heirs or representatives, because property which has ceased to be his cannot be affected by a judgment to which the new owners are not made parties," was not necessary for the decision of the case, and was therefore mere obiter. The question presented was whether the curator of the succession of the deceased plaintiff could issue execution on a judgment that had been rendered in his favor during his lifetime, without first obtaining an order or decree declaring the judgment executory.

Hall & Lisle v. Belden was cited with approval in the Succession of Irwin, 33 La. Ann. 65, and in Fontelieu v. Fontelieu, 116 La. 882, 41 South. 126. The latter decision also cites Morgan v. Lalanne, 32 La. Ann. 1300, Hart v. Connolly, 49 La. Ann. 1587, 22 South. 809, Donaldson v. Maurin et al., 1 La. 39, Taylor v. Pipes, 24 La. Ann. 551, Reggio, Curator, v. Blanchin & Giraud, 26 La. Ann. 532, Leonard v. Sheriff et al., 37 La. Ann. 299, and Bank v. Miller, 44 La. Ann. 199, 10 South. 779, in support of the doctrine that property belonging to a succession under administration is not subject to seizure under a writ of fieri facias or a writ of seizure and sale. The decisions referred to, however, do not apply to executory proceedings.

The plaintiff next cites Morgan v. Lalanne, 32 La. Ann. 1300, where it was said:

"Only in the cases, specially provided by law, can specific property of a succession be seized by a mortgage creditor by executory process."

In that case, the judgment rendered against an heir as warrantor was qualified with the expression "to the extent of her interest in the estate of her deceased father," and it was properly held that the judgment was not executory because the amount was indefinite.

The next case cited by plaintiff is Levy v. Succession of Lehman, 38 La. Ann. 11, where it was held that a writ of attachment could not issue against the succession of a deceased person. The first proposition on which the decision was based is that the acts of the debtor that give rise to a writ of attachment are such as cannot be committed by a succession. In the course of the opinion, however, it was said:

"Another consideration that suggests itself in this connection is that an attachment, being a conservatory remedy, is only designed to hold the property pendente lite, that it may be sold under the proper writ [of fieri facias] to satisfy the judgment when obtained. But nothing is better settled than that succession property cannot be sold under a writ of fieri facias, the only writ by or through which the ordinary moneyed judgment can be executed. Bertin v. Phillips, 1 [La.] Ann. 173; Williams v. Hunter, 13 [La.] Ann. 476; Succession of Patrick, 25 [La.] Ann. 154."

The next case cited by the plaintiff's counsel is Williams v. Hunter, 13 La. Ann. 476, where it was held:

"The seizure and sale, under a fieri facias, of succession property, without an order of court or other legal authority, is illegal; and the rights of minors cannot be divested by such a sale."

In that case, one Lloyd Wells obtained a judgment against James Hunter, and, after the latter's death, caused a writ of fieri facias to issue, under which the sheriff seized the property of the succession and sold it at public auction to the surviving widow in community. Inadvertently the sheriff wrote the name of Lloyd Wells where he intended to write the name of James Hunter, or Succession of James Hunter, so that the deed purported to sell the interest of the plaintiff instead of the interest of the defendant in the property. Pretermitting that error, the court said:

"If the claim of Wells were a special mortgage, he ought to have availed himself of an order of seizure and sale, or obtained an order to have property sold to pay his debt, or he could have waited and been paid in due course of administration. If his claim arose from a judicial mortgage, and he wished to be paid, he ought to have applied for an order for the sale of sufficient property to liquidate his demand. The issuance of a fieri facias and the seizure and sale of succession property without any order of court or other legal authority is plainly illegal; and the rights of the minors were not, under such circumstances, divested."

The decision last quoted was cited with approval in Wisdom v. Parker, 31 La. Ann. 52, in which, however, it was held merely, as is now well settled, that the property of a succession under administration may be seized and sold under a writ of seizure and sale in executory proceedings on a mortgage given during the lifetime of the deceased.

The plaintiff's counsel next cite State ex rel. Mrs. Gausson et al. v. Judge of the Second District, 21 La. Ann. 44, where it was held that a judgment rendered in a suit against the executor of a succession could not be executed by means of a writ of fieri facias. For that reason, it was held that a bond for costs was sufficient to entitle the defendant to a suspensive appeal from the judgment. And it was said:

"A judgment, recognizing a claim against a succession, has generally no greater force in law than an acknowledgment of the claims by an executor or administrator. See articles 985, 986, Code of Practice. In either case the creditor can only obtain the payment of it concurrently with other creditors. C. P. arts. 986, 1054. Whether a claim against a succession is recognized judicially in a direct action, or by opposition to a tableau of distribution, * * * in either event, whatever may be the amount of a creditor's judgment, he can only recover on it such amount as may be awarded to him in such tableau when duly homologated." ·

In the Succession of Irwin, 33 La. Ann. 65, where the executors excepted to the opposition of the city of New Orleans to the final account of the executors, the city being a judgment creditor of the deceased, the court affirmed the ruling, overruling the exception, saying:

"The law distinctly provides that the payment of all debts * * * due by successions shall be enforced by the court of probates, and that the creditor who has obtained judgment can only be paid concurrently with the other creditors of the succession."

The case of Mallard v. Dejan, 45 La. Ann. 1270, 14 South. 238, cited by plaintiff's counsel, is unlike the case before us, in that, in the case cited, the property was sold to effect a partition among the major and minor co-owners. It was held that the sale was null because it was made without an order of court, although made on the recommendation of a family meeting duly homologated.

To the same effect was the decision in Robert v. Brown, 14 La. Ann. 597, and in the Succession of Landry, 128 La. 334, 54 South. 870. The ruling in those cases, that the sale was null for want of an order of sale, can have no application to a case where the sale was made under a writ of fieri facias on a judgment of court, because, ordinarily and unless the rule be different with regard to the seisure of property of minor children, a judgment for a sum of money and a writ of fieri facias issued thereon is all that is necessary to authorize a seizure and sale of the property of the debtor.

As showing the importance of having a special order of the probate court to sell property in which minor children own an interest, the plaintiff's counsel cite a long list of decisions, holding that the purchaser of property sold under an order of a probate court of competent jurisdiction to pay debts of a succession is protected by the order of court, and may depend upon the validity of the proceedings leading up to it. Counsel for the plaintiff argue that, if application had been made by the tutor for an order of court to sell the property of this succession, the judge would, perhaps, have refused to grant the order, because the insurance money belonging to one of the minors amounted to many times as much as the judgment to be paid, and that, if the judge had been induced

to issue an order to sell the property of the succession, he would have ordered the sale of only enough property to pay the debt. In support of the latter proposition, plaintiff's counsel refer to the Succession of Dumestre, 40 La. Ann. 571, 4 South. 328, where it was said:

"No more can a tutor administering a succession than an administrator ask for and obtain the sale of more property than is necessary to pay the debts."

In that case, the adjudicatee of the property refused to take title; and it was held that, although she might be protected by the order of court directing the sale, she had a right to inquire into the validity of the proceedings to ascertain whether the court had authority to render the order. Viewed as a sale to pay debts, it was declared null, not because more property was sold than was necessary to pay the debts, but because the succession belonged to major as well as minor heirs, and it was held that the tutor ex officio had no power of administration over a succession belonging partly to major heirs. The decision, therefore, is not appropriate to the case before us.

In the case of Deshotels v. Lafleur, 134 La. 1052, 64 South. 905, it was held that the major heirs were bound by their knowledge of, and acquiescence in, the administration and sale of the property of the succession, by their mother, as tutrix of the minor co-heirs, to pay the succession debt, and that the purchaser of the property at such sale was protected by the prescription of ten years. Regarding the interest of the minor children, however, the sale was declared null because it was not made pursuant to the forms required for a sale by a tutor of the property of his minor wards. That decision is not applicable here because the sale was made by the surviving wife, who, as surviving partner in community, had no right to administer the community property; and, if the creditor of the community had proceeded by an ordinary action against her, and had obtained judgment and seized and sold the community property under a writ of fieri facias, there can be no doubt that the proceedings would have been invalid. In the case before us, the creditor of the community, which was dissolved by the death of the wife, proceeded against the surviving husband on the theory that he remained the head and master of the community for the purpose of liquidating its debts.

It is to be observed from the foregoing decisions that it has been repeatedly held, as contended by the plaintiff's counsel, that a creditor holding a judgment against a succession under administration has no right to have the property of the succession seized and sold under a writ of fieri facias, but must obtain an order of court to sell the property to pay the debts of the succession in the ordinary course of administration. That rule being largely to maintain an orderly and equitable administration of successions, the court has made no distinction in its application to successions belonging to majors and to those belonging in whole or in part to minor children. But it must be observed that, in not one of the cases cited, was the doctrine applied to a case where a creditor of a community that was dissolved by the death of the wife proceeded against the surviving husband as head and master of the community, individually and as natural tutor of the minor children, by obtaining judgment and seizing and selling the community property, under a writ of fieri facias, to satisfy the community debt.

We shall now review the decisions relied upon by the defendant's counsel.

In Shields v. Lafon, 7 La. Ann. 135, it was held that the surviving husband might validly make a conventional retrocession, after the death of his wife, of property bought during the community, if the retrocession was found necessary to pay the debts of the

community, and that the heirs of the deceased spouse had no right of action to set aside the retrocession, without proof that they had been prejudiced by it. That decision goes further than would be necessary to maintain the defense to this suit; and decisions based upon it have since been overruled in the cases to which we will refer hereafter.

In Rusk, Administrator, v. Warren, Crawford et al., 25 La. Ann. 314, after the death of the wife, the surviving husband, without provoking an administration of the succession of his wife, renewed certain promissory notes which he had issued during her lifetime, and the holders of the new notes obtained judgments against him individually. Having seized and sold his half interest in the community property, they caused the interest of the deceased wife to be seized and advertised for sale to satisfy the balance due on the judgments. One of the heirs of the wife qualified as administrator of her succession, and obtained a writ of injunction to prevent the sale of the half interest in the community property belonging to her succession. It was held that the debts of the community were not novated by the creditors' taking the new notes of the surviving husband after the dissolution of the community. The injunction was dissolved on the ground that the surviving husband had continued to be the head and master of the community for the purpose of settling its debts, and that the property of the community was liable to be seized and sold in satisfaction of the community debts.

From the syllabus of the case of Hawley v. Crescent City Bank, 26 La. Ann. 230, we quote:

"In this case the husband had by law the usufruct of the wife's half of the community property consisting of the undivided half of the lands seized by the judgment creditors; no partition of the community property having been made. Nevertheless, without opposition on the part of the surviving husband, the public administrator came forth and administered on what he styled the estate of the deceased wife, and enjoined the sale of the community property seized by judgment creditors of the community, and which is subject to the payment of their judgments. This proceeding is irregular and illegal, and the injunction must be dissolved, with damages."

With regard to the surviving husbands' acceptance of service of the petition, filing a general denial, and apparently making no defense to the suit in which the judgment was obtained by J. D. Calhoun, we quote the following also from the syllabus of the case last cited, viz.:

"If the surviving husband has the right to control the community assets and to administer them after his wife's death, so as to make bona fide settlements of its debts, he has equally the right to waive or omit specific defenses to suits and in disputable claims."

In Baird et al. v. Lamee et al., 23 La. Ann. 424, it was held:

"The community resulting from marriage is not a partnership. A judgment creditor of the surviving spouse may therefore seize and sell an asset of the community in satisfaction of his demand, and the heirs of the deceased partner cannot set up their residuary rights by way of injunction, and require the rules of partnership settlement of debts to be applied to the settlement of the debts of the community."

The decision in Ricker v. Pearson, 26 La. Ann. 391, is expressed fully in the syllabus, viz.:

"This suit is instituted by the plaintiff against the purchasers at sheriff's sales, he claiming that the property was community property and belonged equally to his father and mother; that when his mother died the community was dissolved; that his mother's share descended to him; that his title thereto has never been divested; and that he should now be quieted therein. The property was sold to pay community debts. Therefore the plaintiff's claim must be rejected."

The facts of the Succession of Hooke, 46 La. Ann. 353, 15 South. 150, 23 L. R. A. 803, were precisely like the case before us. The decision is expressed fully in the syllabus, viz.:

"Where a matrimonial community of acquêts and gains exists, and the wife dies and her succession is opened by the qualification of the husband as natural tutor of his minor children,

issue of his marriage with the decedent, a creditor who has obtained a judgment on a community debt cannot compel an administration of the wife's succession. His remedy is to proceed against the surviving husband and the community property."

In the Succession of Cason, 32 La. Ann. 792, it was said:

"As to the community creditors, they are under no necessity to provoke its liquidation through the medium of the wife's succession, because it is settled they may disregard the wife's interest, and proceed directly against the community property in the possession of the husband, contradictorily with him alone."

In the case of Luria et al. v. Cote Blanche Co., 114 La. 385, 38 South. 279, it appears that a plantation known as Cote Blanche Island belonged to the community of acquêts and gains existing between Mr. and Mrs. Edward Scannel, and was affected by a mortgage securing a large debt due to Birney Fellows. After the death of Mrs. Scannel, Fellows filed a bill of complaint against Edward Scannel in the United States Circuit Court, to foreclose his mortgage. The defendant, Scannel, for answer, admitted all of the allegations in the bill of complaint, and consented that a decree be rendered in accordance with an agreement between him and the plaintiff that was filed in court. The decree was rendered accordingly and the plantation was seized and sold under and by virtue of a writ of fieri facias. The children of Mrs. Scannel, who were minors when the sale was made, thereafter sued to annul the title acquired from the adjudicatee at the marshal's sale. It was conceded by their counsel that they would not have been necessary parties to a foreclosure of the mortgage via executiva; but it was contended that they should have been made parties to the suit in equity. Affirming the judgment rejecting their demand, it was said:

"It is the settled jurisprudence of this state that, on the dissolution of the community by the death of the wife, its creditors may proceed directly against the community property in the possession of the husband, contradictorily with him alone."

Answering the plaintiffs' contention that their father had no authority to consent that judgment be rendered against the community, it was said:

He "had to admit the allegations of the bill or deny them under oath. He was bound to admit the truth."

It is said by the learned counsel for the plaintiff that the decisions, holding that the husband remains the head and master of the community for the purpose of settling its debts after the death of his wife, were all rendered during the régime of the court presided over by Chief Justice Ludeling, from 1868 to 1877, and that they were all overruled in the case of Bennett v. Fuller, 29 La. Ann. 663, and in Tugwell v. Tugwell, 32 La. Ann. 848, and Glasscock v. Clark, 33 La. Ann. 584. We find, however, that the only decisions rendered by the Ludeling court on this subject that have been overruled were those that went so far as to hold that the surviving husband, as head and master of the community, had the same right to dispose of the community property after his wife's death that he had before, even to the extent of disposing of it at private sale as if it were his own. For example, in Bennett v. Fuller, 29 La. Ann. 663, the court presided over by Chief Justice Manning overruled the decision rendered by the Ludeling court in Williams v. Fuller, 27 La. Ann. 634, where it had been held that the husband could, by making a conventional sale of the community property after the death of his wife, divest her minor child of his interest in the property. That doctrine was in conflict with the previous decisions in Broussard v. Bernard, 7 La. 222, and German v. Gay, 9 La. 580, which were expressly reaffirmed.

In Tugwell v. Tugwell, 32 La. Ann. 848, it was observed that there was a conflict in the jurisprudence as to whether the heirs of the deceased wife could sue to recover their

interest in the community property that had been disposed of by the surviving husband after the death of his wife, without first provoking a liquidation and settlement of the community. Adverting to the earlier, and overruling the later, decisions, the question was put at rest in these words:

"To set at rest this vexed question, we distinctly announce that, construing the articles of the Code upon this subject with what we conceive to be their plain and express language, we hold that when the community of acquêts and gains is dissolved by the death of the wife, the respective interests of the surviving husband and of the deceased wife attach at the moment of its dissolution to the property of the community, subject to the payment of the community debts."

The only decisions that were expressly overruled in Glasscock v. Clark, 33 La. Ann. 584, by Chief Justice Bermudez, were Phelan v. Ax, 25 La. Ann. 379, and Daniel v. Ivy, 26 La. Ann. 639. In Phelan v. Ax, it had been held that the heirs of the deceased wife had no right of action to recover her interest in the community property that was sold by the surviving husband after her death, because they had not provoked a settlement of the community. The decision had been quoted with approval six times before it was overruled, and, after being three times declared overruled, was cited with approval in a decision which, however, was reversed on rehearing. Messick v. Mayer, 52 La. Ann. 1173, 27 South. 815. The decision in Daniel v. Ivy merely affirmed the doctrine of Phelan v. Ax. The overruling of this decision did not do away with the right of a creditor of a community of acquêts and gains to proceed against the surviving husband, after the death of the wife, by obtaining a judgment and seizing and selling the community property on a writ of fieri facias to satisfy the community debt.

The evidence in this case does not show conclusively that the sheriff sold more property than was necessary to satisfy the Calhoun judgment. The certificate of mortgages that was read by the sheriff to the bystanders at the sale discloses that there were many mortgages on the property; and, although the surviving husband, individually and as tutor of his minor children, gave a receipt for the proceeds of the sale, in excess of the amount of the judgment with interest and costs, we cannot assume now that the surplus was not used in paying community debts. Be that as it may, our conclusion is, that the judgment creditor, Calhoun, had a legal right to proceed as he did against the surviving partner in community, individually and as natural tutor, and that the sale made under the writ of fieri facias in satisfaction of his judgment was valid. As the property sold for two-thirds of its appraised value, it cannot be said that the interests of the minor children were sacrificed. The plaintiff, in this case, is protected by his legal mortgage on the property that belonged to his tutor individually.

We find no merit in the defendant's plea of estoppel, founded upon the theory that the estate of the plaintiff's deceased mother was liable for the community debts, and that the plaintiff, as her heir, is bound in warranty to defend the title. In fact, as the property to which this plea refers belonged solely to the plaintiff's father, we cannot comprehend the theory on which the plea is founded. It is well settled that the estate of the wife is not liable for community debts; hence there would be no merit in the plea of estoppel if it referred to property that had belonged to the separate estate of the wife. Our conclusion is that the judgment appealed from is correct and should be affirmed.

For the reasons assigned, the judgment appealed from is affirmed.