## No. 1953
## Second Circuit Appeal

CRESTON LUMBER COMPANY v. ES-
TATE OF J. W. COCKERHAM, JR.
FOSTER & GLASSELL, LTD.,
INTERVENOR

(March 30, 1925, Opinion and Decree)

(*Syllabus by the Editor.*)

**1. Louisiana Digest—Appeal—Par. 325.**
An appellee who desires that the appeal bond be corrected should have proper notice, under Section 9 of Act No. 112 of 1916, served on the appellant; otherwise the appeal will not be dismissed.
ON THE MERITS

**2. Louisiana Digest—Judicial Sales—Par. 23.**
The sheriff in selling logs under fieri facias could deliver no better title than the defendant had. Consequently, where he sold the property of other than the defendant, the sale cannot give good title to the purchaser.
(Civil Code, Art. 2452. Editor's Note.)

**3. Louisiana Digest—Sequestration—Par. 1, 24.**
The purpose of this act, Section 3581 of the Revised Statutes, was to require bond of the seizing creditor in all cases where the ownership of the seized thing is claimed by a third person, and that in default of such bond the sheriff shall release the property seized; but there is nothing in these sections, 3579, 3581, of the Revised Statutes to indicate that it was ever intended that if such affidavit was not made the owner would lose his property in case the sheriff finally sold it.

**4. Louisiana Digest—Fixtures—Par. 1, 6.**
As long as the timber was standing on the land it was immovable and was subject to the mortgage, but as soon as it was cut and removed it became personal property and was no longer subject to the mortgage. Judicial mortgage is not a privilege. It does not follow the property which is removed from the real estate on which the mortgage operates.

**5. Louisiana Digest—Execution—Par. 43.**
With very few exceptions, succession property cannot be sold at the instance of a judgment creditor under a writ of fieri facias.

Appeal from the Eleventh Judicial District Court of Louisiana, Parish of Natchitoches, Hon. J. W. Jones, Jr., Judge.

This is a suit coupled with a sequestration possession and ownership of logs. Plaintiff purchased logs from the defendant. The intervenor afterwards had these logs sold under a fieri facias as the property of the defendant and intervenor purchased them at the sheriff's sale.

There was judgment for intervenor, the defendant not appearing, and plaintiff appealed.

Judgment reversed.

Breazeale & Breazeale, of Natchitoches, attorneys for plaintiff, appellant.

Scarborough & Carver, of Natchitoches, attorneys for intervenor, appellee.

ODOM, J. This suit was brought by plaintiff on February 9, 1923. It alleges that it is the owner of certain cypress timber which it purchased from the Estate of J. W. Cockerham, Jr., on December 6, 1922, at Luella, Louisiana, which logs and timber are alleged to be worth $400.00.

Plaintiff alleges that it paid cash for said logs and that delivery thereof was made at the moment of sale; that said logs were left at the railroad station at Luella, Louisiana, for shipment, where they are at this time; and that the estate of J. W. Cockerham, Jr., or some one unknown to petitioner is claiming the ownership of

the said logs and is seeking to deprive plaintiff of its ownership.

Plaintiff asked for and was granted a writ of sequestration under which the logs were seized by the sheriff.

The defendant, the Estate of J. W. Cockerham, Jr., made no appearance in the case; but on February 19, 1923, Foster & Glassell Company, Limited, intervened in the suit claiming ownership of the said timber by virtue of its purchase through a judicial sale in the suit of Foster & Glassell Company, Limited, versus Mrs. Luella Cockerham and John H. Cockerham, joint executors of the Estate of J. W. Cockerham, Jr.

Intervenor alleges that it obtained judgment against said executors, had the same property inscribed in the mortgage records of the parish, which recordation, it is alleged, operated as a judicial mortgage on the land on which said timber grew, and that they procured the issuance of a writ of *fieri facias* under said judgment and had the said timber, which they allege was still the property of the Estate of J. W. Cockerham, Jr., seized, advertised and sold, it becoming the purchaser.

And it especially denies that plaintiff has any valid title to said timber—

"There never having been any valid sale and delivery of the same as against the rights of your petitioner."

And it especially avers that it is the owner of said timber.

In this court intervenor, appellee, has moved to dismiss the appeal on the ground—

"That the instrument purporting to be an appeal bond is not for any amount but for a blank amount and the court is without authority to speculate as to what amount the principal and surety intended to bind themselves for or whether they intended to bind themselves in any amount whatever.."

## ON MOTION TO DISMISS.

The appeal bond found in the record is signed by the Creston Lumber Company as principal and by D. W. Breazeale as surety and is properly filled out, except for the amount, which is left blank.

Appellee moves to dismiss the appeal on that account.

Act No. 112 of 1916, is an act to regulate the form and effect of bonds furnished in all judicial proceedings and—

"To provide for the correction of errors, inaccuracies and omissions in such bonds."

Section 2 of the Act provides—

"That whenever any litigant in this state shall have furnished in connection with any judicial proceeding a bond and surety, and the said bond is insufficient in amount or incorrect by reason of errors or omissions therein, such litigant shall have the right to correct such insufficiency, error or omission in the court of original jurisdiction * * * ."

Section 3 of the Act provides that the adverse party or any party in interest who claims that the bond given in such case is insufficient as to form or substance, etc., must have a notice to that effect served by an officer, and the party who furnished the bond shall have two days in which to correct the error or furnish new or additional bond.

Section 8 provides that the provisions of the act shall apply to bonds in cases of appeal; and Section 9 reads as follows:

"That no appeal shall be dismissed, on account of any error in the amount of the bond or for any inaccuracy or omission in the bond until the party furnishing such bond shall have failed to correct the error * * * as herein above provided."

If the appellee in this case desired that the appeal bond be corrected, it should have served proper notice on the appellant; otherwise the appeal will not be dismissed,

under the plain provisions of the cited and quoted act.

See—

Lampton Realty Co. vs. Kerr, 154 La. 843, 98 South. 266.

Succession of Huxen, 149 La. 62, 88 South. 687.

Bilich vs. Mathe, 149 La. 484, 89 South. 628.

## ON THE MERITS.

There is no appearance in the suit by way of answer by the Estate of J. W. Cockerham, Jr.

John H. Cockerham, who is co-executor of the said Estate with his mother, Mrs. Luella Cockerham, was called as a witness on behalf of plaintiff, the Creston Lumber Company.

He testified that, acting as executor of the estate, he had sold the timber involved in this suit to the Creston Lumber Company, plaintiff herein, and that the purchaser had paid the price thereof, and, in substance, that he considered the timber the property of the plaintiff.

Therefore the only question before us is, whether the timber is owned by plaintiff or the intervenor; for, as stated, the defendant makes no claim to the ownership of the property but, on the contrary, one of the two executors appears as a witness and testifies that the property was sold to the plaintiff and that the estate has no further interest therein.

The undisputed facts are, that the timber involved grew on land belonging to the Estate of J. W. Cockerham, Jr.; that the executors of this estate had the timber cut and removed to the railroad right of way at Luella in the months of July and August, 1922, in order that the same might be shipped when sold; that on December 6, 1922, John H. Cockerham, one of the executors of the said estate, representing the estate and with the concurrence of his mother, the other executor, sold said timber to the Creston Lumber Company for $370.00, cash, and delivered the same to the purchaser on the railroad right of way at Luella, where said timber was at the time; of the sale; that the purchaser took possession of said timber by marking and branding the same; that the purchaser made arrangements with said John H. Cockerham to load said timber on the cars, for which service Cockerham was to be paid, as soon as cars could be obtained; and that timber was not shipped out because cars could not be obtained; and that subsequent thereto, on January 5, 1925, the intervenor procured the issuance of a writ of *fieri facias* under its judgment against Mrs. Luella Cockerham and John H. Cockerham as joint executors of the Estate of J. W. Cockerham, Jr., and that on the same day the sheriff seized under said writ the said timber as the property of the Estate of J. W. Cockerham, Jr., and advertised and sold the same to intervenor, Foster & Glassell Co. Ltd., for the sum of $100.00, which amount, after deducting costs, was credited on the writ.

It will therefore be seen that the plaintiff claims ownership of the timber and logs in this suit by virtue of its purchase thereof from the executors of the Estate of J. W. Cockerham, Jr., on December 6, 1922, and that the intervenor claims the same by virtue of its purchase of the same at sheriff's sale under a writ of *fieri facias* issued in the suit of Foster & Glassell Co., Ltd., against the Estate of J. W. Cockerham, Jr.; the intervenor's purchase of said timber at said sheriff's sale being subsequent to plaintiff's purchase from the executors.

Counsel for intervenor, in brief, lays special stress upon the fact that, as he says plaintiff had notice that the timber was being advertised and sold and took no steps to prevent the sale, and he urges that its failure to take steps to stop the

sale has cut it off from now asserting ownership of the timber.

We think it by no means clear under the testimony in this case that the plaintiff had knowledge that the timber had been seized and was about to be sold. Mr. Peel, of the plaintiff company especially denies, as a witness, that he had knowledge that the logs were being advertised and sold, and says that he knew nothing of intervenor's suit or proceedings to have the logs seized and sold until about the time of or after the sale.

His testimony on this point is a little conflicting. However, we think he finally makes it clear that he knew nothing of the contemplated sale until about the time he consulted his attorney with reference to what steps to be taken in order to gain possession of the timber, and the testimony shows that that was about the 8th of February, 1923, a short time after the logs and timber had been sold to intervenor.

But we think it immaterial whether he did or did not have such knowledge. The intervenor is relying on the sale made to it by the sheriff under its writ of *fieri facias.* The logs and timber were seized and sold as the property of the Estate of J. W. Cockerham, Jr.. It is evident that the sheriff could sell and deliver to the intervenor no better title to the logs than the Estate of J. W. Cockerham, Jr., owned.

No one can convey any greater right to a thing than he has.

C. C. 2452.

This applies to sheriff sales as well as conventional sales. The sheriff could seize and sell to intervenor nothing more than the Estate of J. W. Cockerham, Jr., owned. His sale conveyed to intervenor whatever title in the timber was owned by the Estate of J. W. Cockerham, Jr.: no more. If the plaintiff owned the timber at the time it was seized and sold, he owned it after the sale.

The question whether an owner of a chattel who stands by and sees it sold under judicial process to an innocent purchaser is estopped to assert his ownership to the prejudice of such purchaser, is not presented here for our decision. We are deciding this case on the facts presented.

The facts do not convince us that the intervenor is an innocent purchaser. It had knowledge throught its agent, Baker, and through its attorney, Scarborough, prior to the sale to itself, that the timber had been sold to plaintiff.

On January 29, 1923, John H. Cockerham, one of the executors of the Estate of J. W. Cockerham, Jr., wrote to J. W. Payne, sheriff of the parish of Natchitoches, that J. W. Peel of the Creston Lumber Company had on that date requested him to load said logs for shipment and that said logs were sold to Peel on December 6, 1922, and paid for by his check, the amount being $370.00. He says in the letter, and it is not denied, that he informed Mr. Scarborough, attorney for intervenor, of that fact, and he says—

* * * but as I have stated above do not belong to the estate having been sold by them on Dec. 6."

On the trial of the case Mr. Baker who, we understand, represented intervenor, testified that he saw this letter. Therefore this intervenor is not an innocent purchaser. It knew that the Estate of J. W. Cockerham, Jr., through its executors or one of them had sold these logs and had been paid for them. This letter is dated January 29, 1923, and the logs were sold several days after—February 3rd.

Intervenor urges the view that it was plaintiff's duty to have some one make affidavit that it owned the logs seized and about to be sold. We presume counsel has in mind Act 37 of 1882, page 49, which provides that in all cases where sheriffs are required to seize property claimed

by third persons as owners it shall and may be lawful for such claimants to demand a bond of indemnity of the plaintiff conditioned for the payment of whatever sum such claimants may be damaged on account of such seizure in case they should be adjudged owners of the thing; provided that before obtaining such bond they shall make affidavits that they are the owners, setting forth all the facts on which their ownership rests.

This is now section 3579 of the Revised Statutes.

Section 3581 of the Revised Statutes provides that in case the seizing creditor fails to give such bond then it shall be lawful for the sheriff to deliver up said property to the person in whose possession it was at the time of the seizure.

We think it perfectly evident that the purpose of this act was to require bond of the seizing creditor in all cases where the ownership of the seized thing is claimed by a third person and that in default of such bond the sheriff shall release the property seized; but there is nothing in these sections of the Revised Statutes to indicate that it was ever intended that if such affidavit was not made the owner would lose his property in case the sheriff finally sold it.

But even if that were the law, it is not established to our satisfaction that plaintiff had notice that its property had been seized and was about to be sold.

In J. W. Cockerham's letter to the sheriff dated January 29th, he stated that Mr. Peel of the Creston Lumber Company was to see him on that date and instructed him to load out the cypress logs; but he does not say that he told Peel the logs were then under seizure. Peel swears that he did not know it.

Counsel for intervenor contends, in brief, that at the time the logs were seized under its writ of fieri facias, the logs were still on the land owned by the Estate of J. W. Cockerham, Jr., and that they were subject to its judicial mortgage resulting from the recordation of its judgment against the executors.

There is no testimony in the record that the logs were on land belonging to the Estate when seized and there is no suggestion that they were, except in counsel's brief.

On the contrary, there is testimony that they were at the railroad station at Luella, and Cockerham says they were on the railroad right of way. "The logs were on the railroad siding."

Under these conditions they were no longer subject to intervenor's judicial mortgage. A mortgage affects only immovable property.

C. C. 3281.

As long as the timber was standing on the land it was immovable and was subject to the mortgage, but as soon as it was cut and removed it became personal property and was no longer subject to the mortgage. A judicial mortgage is not a privilege. It does not follow the property which is removed from the real estate on which the mortgage operates.

Weil vs. Lapeyre, 38 La. Ann. 303.

See, also: Citizens Bank vs. Knopp, 22 La. Ann. 117.

Also: Meyer vs. Frederick, 26 La. Ann. 537.

But intervenor did not seize the property on the ground that it had a mortgage on it and in order to have it subjected to its rights. The logs were seized as the property of the Estate of J. W. Cockerham, Jr. Intervenor is ignoring altogether the sale which the executors of this estate made to the plaintiff. It has no right to do that.

Apparently all parties were in good faith. The executors needed money to pay interest on a loan. They applied to the holders of the mortgage for permission to sell the

timber and obtained it. Presumably they used the money obtained for the timber for the payment of interest. It is true that the executors did not apply to intervenor for permission to sell the timber, and the fact that they applied for permission to sell the timber from other mortgage creditors is cited to show good faith on their part.

The purchaser, we think, was in entire good faith. The logs which it bought of the executors were found by a representative of the plaintiff on the railroad right of way on December 6, 1922. They had been cut and removed from the land of the executors in July or August of the same year. Mr. Peel, the representative of the plaintiff, ascertained that the logs belonged to the Estate and it seems went to Mrs. Luella Cockerham, one of the executors, to purchase the timber. He was advised by her to wait until the arrival of her son, who would handle the matter, and upon his arrival the sale of the logs was agreed upon. The purchaser paid the price and took possession of the logs.

In all of intervenor's proceedings it has not attacked the sale which was made by the executors to the plaintiff in this case. Intervenor has merely ignored the sale. In our opinion it has no right to do that.

But suppose it be conceded, which is not the case, that there was no sale to the plaintiff of the property in question, and that the same belonged to the Estate of J. W. Cockerham, Jr., on the day it was seized by the sheriff under the *fieri facias*, even then intervenor had no right or authority under the law to seize and sell it.

Succession property cannot be sold at the instance of a judgment creditor under a writ of *fieri facias* except, possibly, in exceptional cases.

See: Succession of Simpson vs. Bulkley, 140 La. 589, 73 South. 691, where the whole matter is discussed by the organ of the court and all the authorities cited and many of them quoted. The exceptions to the general rule are there noted.

The plaintiff purchased the timber in controversy in good faith. The sale was complete. The price was paid and delivery was made. The executor says that the sale was made in order to realize money with which to pay interest on a debt due the said Estate and presumably the money was used for that purpose. Under those conditions no harm could possibly come to any creditor on account of the sale. The Estate of J. W. Cockerham, Jr., has not repudiated the sale, nor has any one attacked it.

For reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be reversed and avoided, and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Creston Lumber Company, and against intervenor, Foster & Glassell Company, Limited, decreeing that the plaintiff is the owner of the said timber and entitled to the possession thereof; and it is ordered that the writ sued out be maintained, and the sheriff of the parish of Natchitoches be ordered to deliver the logs seized under the writ of sequestration in this case to the plaintiff. All costs to be paid by intervenor.