McCluskey v. Webb.

*Judgment affirmed.*

## Deborah McCluskey *v.* Thomas Webb.

The validity of a judgment ordering the execution of a will, cannot be inquired into collaterally.

A bequest of whatever may remain after the payment of debts to a sister of the testator, for the purpose of educating her children, and subsisting her and them, with power to her to make such other disposition of the property to their use and benefit as circumstances may require; and providing that his brother shall participate in such property, to a certain extent, should he consider himself in equal need with his sister's family, is not a substitution or a *fidei commissum*. *Per Cur.* The testator does not leave the property to his sister to preserve it for, and surrender it at any time to her children. She has the entire control of it, to maintain herself and children, to educate them, and to do whatever she may think their interest requires. She may expend it all for such purposes.

A substitution is never presumed. Unless the will cannot be understood otherwise it will be maintained.

To acquire by the prescription of ten years, it is not enough to show a title translative of property, accompanied by possession for ten or twenty years. Good faith is essential, and must have existed at the commencement of the possession. Code of 1808, p. 488, art 72. Such good faith does not consist in the belief only, that the person whose rights are acquired was the real owner of the property. This is indispensable to constitute good faith on the part of the purchaser; but, even where it exists, there may be bad faith in the latter, as where a deputy sheriff purchases property sold by himself under a *fieri facias*. He knows the vices of his title; and does not, according to art. 495 of the Civil Code, possess as owner by virtue of an

---

act sufficient in terms to transfer the property, of the defects of which he was ignorant.

A purchase by a deputy sheriff of property sold by himself under a *fieri facias*, is absolutely null.

Where a title is absolutely null, it cannot be the basis of prescription. *Aliter*, as to relative nullities. If those in whose favor they are established do not complain, prescription may be acquired under a title containing such relative nullities.

The prescription of five years, established by the act of 10 March, 1834, applies only to informalities in the manner of advertising and making public sales.

APPEAL from the District Court of St. Helena, *Jones*, J.

*Lawson*, for the plaintiff.

*Sheafe* and *J. P. Bullard*, for the appellant.

MORPHY, J. This action is brought by the plaintiff as a legatee under the last will of John W. Leonard, to recover a tract of land in the possession of the defendant, denominated the Gustavus tract, and designated as section No. 15 on the township map of Township No. 2, Range 4, East. The petition alleges, that the testator died without descendants or ascendants, and that after a few bequests to his collateral relations, he willed, that whatever may remain, after the payment of his just debts, should be paid over to the plaintiff, his sister, for the purpose of educating her children Ferdinand, Alfred, and Elenor, and to subsist them and herself, and to make such other judicious disposition of the property to their use and benefit as circumstances may require ; that he willed, moreover, in case his property should produce more than sufficient to pay his debts, " that his brother Samuel Leonard should participate in the overplus, in the following ratio, (if he considered himself in equal need with his sister's family,) that is to say, from the first $1000, he should receive $200 ; from the second thousand, $300 ; from the third thousand, $350 ; from the fourth thousand, $400 ; from the fifth thousand and all other sums, an equal moiety, &c ;" that the deceased died on the first of November, 1818, and that his last will, in the olographic form, was probated according to law. That on the 11th of December, 1823, Thomas Webb, then acting as deputy sheriff of the parish of St. Helena, under the authority of two writs of *fieri facias* is sued against Samuel Leonard, did levy upon the aforesaid tract of land, which belonged to the succession of J. W. Leonard, to satisfy the same ; and that, on the 19th of January, 1824, the said

Thomas Webb, at a sheriff's sale, did sell and adjudicate the said property to himself, for the price of fifty-one dollars, payable in a twelve months bond, as appears by the return made by himself as deputy sheriff in the case of *Whiting & Fletcher* v. *Samuel Leonard*. The petition further avers, that the pretende dsale by the defendant to himself was absolutely null and void, as made in contravention of law, and because the land was sold as the property of Samuel Leonard, when in fact it did not belong to him, but to the estate of the late J. W. Leonard. The petition further shows, that the plaintiff's three children Ferdinand, Alfred, and Elenor, legatees with herself under the will, have all three died, and that she, as sole surviving parent, has succeeded to all their rights ; and that Samuel Leonard is the only legatee under the will who is, or may be interested in the said tract of land. The petition concludes by praying that he be made a party to this suit ; that the sheriff's sale be declared a nullity ; and that the land be surrendered to the legatees, to be disposed of according to the provisions of the will. Various exceptions taken to the petition, some of which will be hereafter noticed, having been overruled, the defendant pleaded the general issue, and set up the prescription of five and ten years. The case was laid before a jury, whose verdict being in favor of the plaintiff, judgment was entered up accordingly ; whereupon the defendant appealed.

There is no dispute about the facts of this case, which the record shows to be as stated in the petition.

On the trial, the introduction of the last will of the deceased was objected to, on the ground that it had not been legally probated, it appearing from the *procès verbal* drawn up by the judge that the probate was made at the dwelling house of the late J. W. Leonard, when it should have taken place at the Court House. The judge properly disregarded this objection. A Special Court was held by the Probate Judge of St. Helena at the residence of the deceased. Being satisfied by the evidence adduced, that the material requirements of the law for the validity of olographic testaments had been complied with, he rendered a judgment confirming the will, and ordering its execution. This judgment cannot be inquired into collaterally. 2 Mart. N. S. 292. 2 La. 590.

The will itself has been attacked as containing a substitution or

*fidei commissum*, which, it is urged, renders void the legacy made in favor of the petitioner. We have attentively considered the several provisions of the will, and cannot discover in them the features of a substitution, which is defined to be, "a disposition by which the donee, the heir, or legatee is charged to preserve for, or to return a thing to a third person." Civil Code of 1808, p. 216, art. 40. The testator, here, does not leave the property to his sister with a charge to preserve it for, and surrender it at any time, to her children. She has, on the contrary, the entire control and disposition of it, to maintain herself and children, to educate them, and to do all that she may think the interest of herself and her children requires. Under such a provision, if the funds remaining after paying the debts were barely sufficient to defray the expenses of bringing up and educating her children, she was surely authorized to expend every dollar of such balance. How then can such a bequest be termed a substitution. It would seem that the testator intended either a joint legacy for the benefit of his sister and her children, or a legacy to her burdened with dispositions or conditions in favor of her children. Having survived all her children she has inherited their portion of the legacy, or has been relieved of the burdens imposed upon her by the bequests. In relation to substitutions, the rule is well settled in our jurisprudence, that they are never presumed; and that unless a clause in a will necessarily presents a substitution, and cannot be otherwise understood, it will be maintained and carried into effect. 4 Mart. N. S. 45. 7 Ib. N. S. 417, 4 La. 504.

Our attention has next been called to the charge given by the judge on the plea of prescription, which is said to be erroneous. He instructed the jury that if the defendant being deputy sheriff, purchased the land at a sale made by himself, he did not hold it in good faith, and that the act of sale by the sheriff of the parish to him of the said land could not be the basis of prescription. This charge appears to us correct, and in accordance with the true spirit and rules of our jurisprudence. On general principles as well as by the laws in force in 1824, the defendant could not lawfully become the purchaser of the property he was employed to sell. By the laws of the *Recopilacion* the prohibition to purchase at a judicial sale extended to all the officers of the law, even when

the sale was not made by them. L. 24. T. 8. B. 2, and L. 13. T. 4. B. 3. *Curia Philip.* B. 1st, *Com. Terreset,* Chap. 4. No. 16, *verbo* Factory. 11 Mart. 297. 8 Ib. N. S. 165. 6 La. 407· 9 La. 44. 15 La. 398. Story on Agency, § 211. In order to invoke the prescription of ten years, it is not enough to show a translative title, accompanied by a possession of ten or twenty years. Good faith is an essential requisite, and must have exist- ed at the commencement of the possession. Civil Code of 1808, p. 488, art. 72. It is good faith alone which in the eye of the law purifies the title of its defects, and causes the possessor under a just title to be preferred to the true proprietor, who has remained so long silent and neglectful of his rights. But it is said that the good faith required by law, consists only in the belief that the per- son whose right we acquire, was really the true owner of the pro- perty sold. Civil Code, art. 3446, 3414. This belief is certainly indispensable to constitute good faith in the purchaser, but even where it exists there may be bad faith on the part of the latter; when for instance he has acquired, as in the present case, in vio- lation of a prohibitory law. In such a case he knows the vices of his title as much as if it were a defect of form apparent on its face, for he cannot plead ignorance of the law. He cannot believe himself to be truly the owner of the property; he cannot have that *justa opinio quæsiti dominii* necessary to prescribe. He is not, according to article 495, that *bona fide* possessor, who posses- ses as owner by virtue of an act sufficient in terms to transfer property, of the defects of which he was ignorant. The defend- ant must have known, that the sale he made to himself was a nul- lity, which did not transfer the property to him, as the law allows no civil effects to acts which it prohibits. The nullity which ex- ists in the defendant's title is an absolute one, founded on public policy and good morals. It was established, say the Spanish jurists, to avoid frauds. After laying down the rule that such a title cannot be the basis of prescription Troplong says: "*Ainsi un contrat qni aurait une cause déshonnête, illicite, contraire aux mœurs, par exemple, l'achat d'un immeuble litigieux fait par un avoué, ne pourrait justifier la prescription de dix et vingt ans. A cet exemple, D'Argentrée assimile la donation faite par un malade*

*au médecin qui le soigne, de la maladie dont il vient à mourir en-suite ; il est facile d'en trouver d'analogues.*

*D'ailleurs, on conçoit aisément que celui qui mettrait à l'origi-ne de sa possession ce cachet d'illégalité et de mépris pour des prohi-bitions si morales, ne serait pas de bonne foi.    De la Prescription, Vol. 2, No. 905.*

It is otherwise with regard to relative nullities.    If the persons in whose favor they are established do not complain, the title which contains such a relative nullity is nevertheless a just title, under which prescription can be acquired.    2 Troplong, Prescrip. No. 902 to 907 and 491 to 922.    As to the prescription of five years, established by the act of 1834, we have heretofore held, and have no reason to doubt the correctness of our determination, that it covers only informalities occurring in the manner of adver-tizing and making public sales.

The judgment appealed from is said to be clearly erroneous, as it gives the whole land to the plaintiff, who at most can claim only one half of it, Samuel Leonard being entitled under the will to the other half.    The will in our opinion, vests no right or title whatever to the land in Samuel Leonard.    He is to receive cer-tain amounts of money on certain contingencies, which may or may not arrive.    What will be coming to him, if any thing at all, can-not be ascertained until all the property of the estate shall have been sold, and the debts of the deceased paid.    The object of this suit was to bring back into the succession of J. W. Leonard, this land, to be disposed of under the will, and we do not understand the judgment as decreeing any thing more.    As to the exception taken to the plaintiff's right to sue, on the ground that being a le-gatee under a universal title, she was bound to demand of the presumptive heirs a delivery of her legacy, according to article 1605 of the Civil Code it cannot avail the defendant.    From the terms of the will, the plaintiff might well be considered as a uni-versal and residuary legatee, charged with paying a portion of the assets of the estate to another person ; but were she viewed only as a legatee under a universal title, there was no nearer presump-tive heir of the deceasedt han herself, to whom she could apply as having the legal seisin of the propertyof the estate.    5 Toul-lier, No. 611.·  No. 495.

*Judgment affirmed.*