99 So.2d 531 (1957)
Louis P. CALLAHAN et al.
v.
Joseph O. AUTHEMENT.
No. 4538.
Court of Appeal of Louisiana, First Circuit.
December 23, 1957.
*532 Guzzetta & LeBlanc, Thibodaux, for appellants.
Donald L. Peltier, Harvey Peltier, Thibodaux, for appellee.
ELLIS, Judge.
This matter was previously before this court on appeal from a judgment of the District Court sustaining the defendant's exception of no right or cause of action and this court reversed and set aside the judgment of the lower court maintaining the exception and remanded the case for further proceedings. See Callahan v. Authement, La.App., 77 So.2d 104.
The case was duly tried in the District Court and resulted in a judgment dismissing the plaintiffs' suit and they have again appealed to this court.
Plaintiffs have filed this petitory action against Joseph O. Authement, defendant-appellee, alleging that they were the sole heirs of Joseph Callahan, their father, and, as such, are the owners of an undivided one-half interest in and to the following described property to-wit:
"A certain tract of land situated on the left bank of Bayou Lafourche, about forty three (43) miles below the Town of Thibodaux, measuring two and one third (2 1/3) arpents front on said Bayou Lafourche by a depth of forty (40) arpents; bounded above by land of Raphael Gaude, now or formerly and bounded below by land of Simon Abraham now or formerly, together with all improvements thereon rights, ways, privileges, advantages and servitudes attached thereto and belonging."
The facts reveal that Marie Anastasie Gaude, wife of Joseph Callahan, mother and grandmother of the plaintiffs herein, during her marriage to Joseph Callahan acquired the above described property from her father, Joseph Gaude, by act of sale dated January 22, 1881, recorded on January 31, 1881, in the conveyance records of LaFourche Parish. The instrument transferring the property from Joseph Gaude to his daughter, Mrs. Callahan, is on its face a bona fide sale expressing a consideration of $350 cash with full warranty of title and her husband appears in the deed to duly authorize his said wife "to accept and purchase for herself, her *533 heir and assigns * * *". The deed does not state that the wife is purchasing with her own separate and paraphernal funds. Mr. and Mrs. Callahan lived on this property, raised their family of ten children there. On October 1, 1905, Joseph Callahan died intestate leaving his widow, Mrs. Marie Gaude Callahan, and their ten children. Plaintiffs contend that upon the death of their father they inherited his undivided one-half interest in this property, whereas the defendant contends that the property was the separate property of the wife, however, we do not believe that the testimony is sufficient to overcome the presumption of community, and, therefore, hold that upon the death of the husband the children inherited his undivided one-half of this community property.
On February 21, 1910, Mrs. Marie Gaude Callahan, plaintiffs' mother and grandmother, respectively, signed a note in the amount of $1,100 payable to herself and endorsed in blank which was secured by a mortgage of a portion of the property acquired from her father, supra, measuring one arpent front on Bayou Lafourche by 40 arpents in depth, together with all buildings and improvements thereon. On August 27, 1913, William Fick, holder and owner of the above described promissory note, foreclosed on the property and it was sold under a writ of seizure and sale to satisfy the amount of the note, interest, attorneys fees and costs. The property was adjudicated to the defendant, Joseph O. Authement, as agent for one Emma Guidry, widow of Julien Lefort; for $400 and thereafter on April 28, 1915, the defendant, as the assignee of all the right, title and interest of William Fick in the note and mortgage granted by Mrs. Marie Gaude Callahan, filed suit asking for a deficiency judgment, which was rendered on May 21, 1915, in defendant's favor in the full sum of $1,506.36. Mrs. Callahan died during the latter part of 1924 or early part of 1925 and on May 16, 1925, the defendant filed a petition asking for a revival of the judgment and in this petition named the surviving heirs of Mrs. Callahan, three of whom were minors and for whom a tutor ad hoc was appointed to represent them in the proceeding. An answer in the nature of a general denial was filed on behalf of the minors by the special tutor ad hoc and no answer was filed by the other heirs and on the 14th day of September, 1925 judgment was read, rendered and signed in open court at Thibodeaux, La., reviving and giving "full force and effect against the succession of Mrs. Marie Gaude, widow of Joseph Callahan, for ten years from date of this judgment of renewal and revival."
On the 30th day of September, 1925, the defendant obtained a writ of seizure and sale of the property, "real and personal rights and credits of Mrs. Marie Gaude, widow Joseph Callahan". The Sheriff accordingly seized the property in question and after due notice of advertisement, etc., on the 28th day of November, 1925, his return states "do hereby sell, set over, transfer and convey to and unto the said Joseph O. Auheement, his heirs and assigns, all the rights, titles and interest and claims which the said * * *" and then are named all of the heirs of Mrs. Joseph Callahan had in and to the property in question. Thus we see that although the sheriff under the order of seizure and sale was only empowered to sell the property of Mrs. Marie Gaude, widow of Joseph Callahan, which would have been an undivided interest in the property, he actually seized and sold the entire property which included the undivided half interest of the plaintiffs herein.
Defendants plead in bar of the plaintiffs' recovery and re-assert in this court that (1) the property in question was in fact separate property; (2) that if there is any invalidity in the title, defendant acquired the property in dispute by ten years acquisitive prescription; (3) that if plaintiffs ever had any rights they have been lost by estoppel and/or laches.
*534 The Lower Court in dismissing the plaintiffs' suit and rendering judgment in favor of the defendant sustained defendant's plea of acquisitive prescription of ten years under Article 3479 of our LSA-Civil Code.
As to the first ground of defense offered by the defendant we have carefully considered the documentary as well as the parol evidence offered, and while it tends strongly to point to the fact that the property was possibly separate property or intended to be the separate property of Mrs. Callahan, in our opinion it is not sufficient to overcome the presumption in favor of the community.
The second ground of defense is a plea of ten years acquisitive prescription. The immediate articles pertinent to a discussion of this problem are hereinafter quoted insofar as necessary and are as follows:
Article 3478:
"He who acquires an immovable in good faith and by just title prescribes for it in ten years * * *"
Article 3479:
"To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
"1. Good faith on the part of the possessor.
"2. A title which shall be legal, and sufficient to transfer the property.
"3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
"4. And finally an object which may be acquired by prescription."
Article 3474:
"Immovables are prescribed for by ten years, when the possessor has been in good faith and held by a just title during that time."
Article 3483:
"To be able to acquire by the species or prescription mentioned in this paragraph, a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title."
Counsel for the plaintiffs earnestly and skilfully argues that the defendant cannot satisfy two of the requirements set forth under the above articles as being necessary for a successful plea of ten years acquisitive prescription. He contends, and we quote from his brief:
"The plea of acquisitive prescription in this proceeding should not have been maintained by the trial judge primarily for two reasons; First, the defendant's plea of prescription should have been rejected by the Court because it is founded on an absolute nullity and is not a `just title' within the intendment of the Civil Code, Article 3483. Secondly, the defendant was not a possessor in good faith because of his actual or constructive knowledge of the defects in his title."
Counsel for the plaintiffs in arguing his first contention, viz., that the proceedings in the case at bar were an absolute nullity, cites as his first authority the case of Lacaze v. Hardee, La.App., 7 So.2d 719. Counsel in his brief on this point and with regard to the cited case argues:
"* * * Thus barring any acceptance by the plaintiffs of the succession of Mrs. Callahan, the question to be determined is what right did the defendant have to proceed personally against the property inherited by the plaintiffs from Joseph Callahan, when seeking the execution of his judgment rendered in personam against the Succession of Mrs. Joseph Callahan.
"Civil Code, Article 2452 states the general proposition that the sale of property *535 belonging to another is null. In Lacaze v. Hardee [La.App.], 7 So.2d 719, the defendant Hardee obtained a personal judgment against the two minor McWilliams children, sole heirs of D. R. Williams, from whom they had inherited an undivided 1/3 interest in a certain tract of land in Sabine Parish. This judgment was also rendered against the major co-owners of the other 2/3 interest, who were the brother and sister of the decedent. The minors, as in the case at bar, were served through a tutor ad hoc. At the time Hardee's suit was instituted the minors resided in Caddo Parish with their mother, the latter having applied for the administration of their father's succession in Caddo Parish. The defendant Hardee caused a writ of fieri facias to issue against the two major co-owners in satisfaction of his judgment against them and the minors; however, in the sheriff's sale held by virtue of said writ the entire property was adjudicated to the judgment creditor.
"The Court in the Lacaze case, held that the judicial sale of the minors' interest in the succession of their father made in enforcement of a judgment in personam against the minors (the validity of which was the subject of serious doubt) was an absolute nullity.
"`Even if it be conceded that the personal judgment so obtained against the minors was valid, and we seriously and strongly doubt its validity for reasons pertaining to the court's jurisdiction, clearly the judicial sale of such undivided one-third interest, effected under a writ of fieri facias granted pursuant to the judgment's authority, was null and void.
"The estate of decedent D. R. McWilliams, of which the adjudicated interest was a part, was at the time of the discussed seizure and sale undergoing the process of administration. It is true that the named two minors were his sole heirs at law; but they had not accepted the succession unconditionally. In fact, by operation of law, there had occurred for them an acceptance with the benefit of inventory. Civil Code, Article 977. Consequently, the property did not belong to them, but was a succession asset. They were entitled only to the residuum following completion of the administration. Self v. Morris, 7 Rob. 24; Succession of Ogden, 10 Rob. 457; Arthur v. Cochran, 12 Rob. 41; Andat v. Gilly, 12 Rob. 323. Civil Code, Article 1058. And as provided in Civil Code, Article 2452, the sale of a thing belonging to another, such as here occurred, is null.
"`Of course, an heir's undivided share in a succession may be seized and sold under execution; but the proceeding must concern the whole of his rights in the succession, subject to the charges with which they are burdened, and not a specific part of the property by him inherited. Mayo v. Stroud, 12 Rob. 105.
"`Furthermore, property belonging to a succession under administration cannot be sold under a writ of fieri facias, except in certain cases of which this is not one, the creditor being relegated to the administration proceedings for payment of his claim. This general rule is primarily in the interest of maintaining an orderly and equitable administration of successions. Fontelieu v. Fontelieu, 116 La. 866, 41 So. 120; Succession of Simpson v. Bulkley, 140 La. 589, 73 So. 691, L.R.A.1917C, 494; Creston Lumber Company v. Estate of Cockerham, Jr., 2 La.App. 29; Succession of Williams v. Land Development Company, 3 La.App. 737; and the cases cited in these authorities.
"`The attacked judicial sale being an absolute nullity, defendant's pleas of prescription of one and two years are groundless. Buillard v. Davis, 185 La. 255, 169 So. 78; Dickey v. Pollock, La.App., 183 So. 48, Lacaze v. Hardee [La.App.], 7 So.2d 719.'
"It would seem that if a sale of succession property in enforcement of a personal judgment against the heirs to that succession is an absolute nullity that it would *536 logically follow as a corollary that a sale of the heir's personal property, where the heir has not unconditionally accepted the succession, in enforcement of a judgment against that succession, is likewise an absolute nullity."
While the facts in the Lacaze case are quite different from those in the case at bar in that seizure and sale in the Lacaze case was made of property in the process of administration and belonging to a succession and also upon an invalid judgment and the suit having been filed within four years after the adjudication of the land by the Sheriff this precluded any question of ten years acquisitive prescription which is the main one in the case at bar. Nevertheless, the facts in the case under consideration lead to the same conclusion as that reached in the cited case, viz., that the sale of the undivided half interest of the plaintiffs herein was an absolute nullity. In the present case it is to be remembered that the judgment under which the property is being sold had been obtained personally against plaintiffs' mother and grandmother, Mrs. Marie Gaude Callahan, and its revival did not enlarge its scope and, also, the plaintiffs herein had never tacitly nor expressly accepted the succession of their mother. In addition, the order of seizure and sale was directed to the sheriff to seize and sell property of "Mrs. Marie Gaude, widow Joseph Callahan" and the sheriff therefore had no right or authority to sell anything but the undivided one-half interest of Mrs. Marie Gaude, the widow of Joseph Callahan, in and to the property in question.
Counsel for plaintiffs next contends that the sale of the plaintiffs' undivided half interest by the sheriff under an order limited to the interest of their mother, Mrs. Marie Gaude Callahan, being an absolute nullity that the defendant's title cannot be a just title and therefore cannot serve as the basis of the ten year acquisitive prescription under the article heretofore cited of our Civil Code, and counsel relies upon the Supreme Court case of Hicks v. Hughes, 223 La. 290, 65 So.2d 603. This case concerned a petitory action in which property involved in the dispute was acquired by one John W. Hughes, Sr., during his marriage to Mrs. Della Hughes and fell into the community of acquets and gains which existed between them. Mrs. Della Hughes died in January 1915, survived by her husband and nine children, and thereafter John Hughes, Sr., the surviving spouse, sold an undivided one-half interest in the property to his son, Ed H. Hughes.
John W. Hughes, Sr., died in 1923. His succession was opened in 1924 and his son Ed H. Hughes qualified as administrator, and although he had already acquired his father's interest by private deed, Ed Hughes became the purchaser of the same undivided one-half interest in the property at an administrator's sale to pay the debts of the succession in June of 1924. He thereafter filed a final account showing that after payment of all debts of the succession there was a residue to be distributed among the heirs.
In 1925 after the filing of the final account and more than ten years after the death of his mother, Mrs. Della Hughes, Ed H. Hughes, filed a petition in District Court alleging that his mother had died more than ten years before and that debts were due which made an administration of her estate necessary, and praying that he be appointed administrator. He was appointed administrator and as such he petitioned for the sale of his mother's one-half interest in the property, alleging that there were debts due by her estate. The order to sell the property was signed by the Clerk of Union Parish on October 24, 1925. On November 24, 1925, Ed Hughes sold to Guy F. Hicks an undivided one-half interest in the property which had belonged to his father, and pursuant to the order signed by the Clerk of Court in the Succession of Mrs. Della Hughes, Ed Hughes as administrator sold to Guy Hicks at administrator's sale on Jan. 9, 1926, the other one-half interest in the property which belonged to the succession of his mother. Hicks immediately *537 went into possession of the property, and he or his heirs and his surviving spouse have possessed it ever since.
The heirs of Mrs. Hughes urged the nullity of the judicial sale in which her one-half interest in the property was sold by her son, Ed H. Hughes, the administrator, to Hicks on the ground that the order of sale granted and signed by the Clerk of Court was null and void because the application of the administrator for the sale of the property was not accompanied by a statement of the debts of the succession as provided in Act 204 of 1924, LSA-R.S. 13:901.
The Supreme Court in passing upon this contention held [233 La. 290, 65 So.2d 606]:
"Since the application for the sale was not accompanied by a statement of the debts of the succession, the clerk was incompetent, without power, and consequently without jurisdiction to order the sale of the property, because that was a condition upon which the jurisdiction of the clerk depended. For these reasons we have concluded that the order of sale signed by the clerk of court in the instant case was an absolute nullity as one granted without jurisdiction or authority, and that the sale made pursuant thereto was therefore likewise an absolute nullity."
The widow and heirs of Guy F. Hicks, appellants in the suit, also plead prescription of ten years acquirendi causa and the Supreme Court on this plea held:
"Appellants also plead the prescription of 10 years acquirendi causa. The sale of the one-half interest in the property belonging to Mrs. Della Hughes was an absolute nullity, and a title which is an absolute nullity cannot be a just title and cannot serve as the basis of the 10-year acquisitive prescription. Article 3483 of the LSA-Civil Code announces that, `To be able to acquire by the species of prescription mentioned in this paragraph, a legal and transferable title of ownership in the possessor is necessary; that is what is called in law a just title.'
"In Buillard v. Davis, 185 La. 255, 169 So. 78, this court decided that a judicial sale of succession property where the court was without jurisdiction was an absolute nullity, was not a legal and transferable title of ownership, and could not be the basis of acquisitive prescription. See Also McCluskey v. Webb, 4 Rob. 201."
The Hicks case was followed by a very recent case decided by our Supreme Court of Boudreaux v. Olin Industries, Inc., 232 La. 405, 94 So.2d 417, 418. The facts with regard to the property involved in the suit were stated by the Supreme Court to be as follows:
"* * * This property was acquired by defendant under warranty deed from Frost Lumber Industries on January 23, 1952. Frost Lumber Industries was the predecessor of Frost-Johnson Lumber Company, which acquired the tract by general warranty deed from Union Saw Mill Company on November 27, 1917. Union Saw Mill Company acquired an undivided 5/6ths interest in the property during 1910 by separate conveyances from the heirs of John Reeves. Parks and Mary Elizabeth Parks, who held under patent from the United States Government. The remaining ¼th interest was acquired by Union Saw Mill Company in 1916 by purchase at sheriff's sale held pursuant to a partition by licitation invoked by Union.
* * * * * *
"This suit, which was filed on June 18, 1952, assails the validity of the conveyance by plaintiff's mother in 1910 on the ground that the signatures of both their mother and father were forged and plaintiffs pray that the deed be declared null and void and they be recognized *538 as the owners of an undivided 1/6th interest in the land."
With regard to the charge of forgery levelled by plaintiffs the Supreme Court stated:
"Counsel next contends that, since plaintiffs charged forgery of their mother's signature, the property could not be acquired by prescription as a forged deed cannot form the basis of a just title. The cases of Whitney Nat. Bank of New Orleans v. Schwob, 203 La. 175, 13 So.2d 782 and Pitre v. Peltier, 227 La. 478, 79 So.2d 746 are cited in support of this proposition.
"This argument is, of course, predicated on the assumption that the 1910 deed to Union Saw Mill Company is a forgery, a matter about which we entertain serious doubt. But conceding, for purposes of discussion, that such is the case and that the title acquired by Union Saw Mill Company is absolutely null, this circumstance does not affect the validity of defendant's prescriptive title. The Schwob and Peltier cases cited by counsel are not authority for the proposition invoked by him as those cases dealt only with the liberative prescription. And, while our recent decision in Hicks v. Hughes, 223 La. 290, 65 So.2d 603, supports the view that an absolutely null deed cannot form the basis for the acquisitive prescription of ten years by the vendee, that authority is not apposite here for the reason that defendant is not depending upon the deed from Mrs. Thomson to Union Saw Mill Company for its prescriptive title but, rather, upon the 1917 deed from Union Saw Mill Company to Frost-Johnson Lumber Company. The fact that we are assuming that the title of Union Saw Mill Company was absolutely null, and that that company could never use its title as a basis for prescription, does not affect the prescribable right of the transferees of Union Saw Mill Company. Indeed, it was expressly held in Clayton v. Rickerson, 160 La. 771, 107 So. 569, that a person holding under a deed, although absolutely null when the property was transferred to its vendor, could nevertheless acquire a valid prescriptive title if the title under which he possesses is one that is genuine on its face and translative of the property. See also Zahn v. Arensberg, 154 La. 70, 97 So. 301 and Nethery v. Louisiana Central Lumber Co., 175 La. 753, 144 So. 486."
Under Article 3474, supra, which provides that immovables are prescribed for by ten years when held by the possessor in good faith and by a just title, and under Article 3483, supra, which defines a just title as "a legal and transferable title of ownership in the possessor * * *" under Subdivision heading 4 in the notes to each article respectively, we find the following:
4.Just Title
"To support the prescription, there must be a just title and good faith at the commencement of the possession. By this is meant that the title should purport to convey the ownership, should be translative of property, such as a sale, donation, etc. The title must be apparently good, and of a character to induce the possessor's belief that it was perfect. One defective on its face would be insufficient; aliter where the defects proceeded from circumstances or evidence dehors the instrument. And his title must have been derived from one whom the possessor honestly believed the real owner. O'Connor v. Barre, 1814, 3 Mart.(O.S.) 446; Carrel's Heirs v. Cabaret, 1820, 7 Mart.(O.S.) [375,] 376; Dromgoole v. Gardner's Widow, 1821, 10 Mart. (O.S.) 433; Bonne v. Powers, 1825, 3 Mart.(N.S.) 458; Frique v. Hopkins, 1826, 4 Mart.(N.S.) 212; Plauche v. *539 Gravier, 1829, 7 Mart.(N.S.) 518; Shepherd v. Carlin, 1829, 8 Mart.(N.S.) [278,] 279; Morand's Heirs v. Mayor, etc., of New Orleans, 1833, 5 La. [226,] 240; Verret v. Theriot, 1840, 15 La. 106; Eastman v. Beiller, 1842, 3 Rob. 220; McCluskey v. Webb, 1843, 4 Rob. 201; Sandoz v. Gary, 1845, 11 Rob. 529."
Under the explanation or definition of a just title or just what is meant by a just title in the two articles referred to, the possessor, that is, the vendee, must have acquired by a title purporting to convey ownership and this title should be translative of property, which is explained as referring to the form of the instrument such as a sale or donation. The title on its face must be apparently valid so as to induce the possessor-vendee to believe that it was a perfect one. Any defect in the title must be shown, so to speak, within the four corners of the act of sale or transfer, on its face.
An excellent discussion of the requisites necessary to a successful plea of ten years acquisitive prescription is shown in the case of Pattison v. Maloney, 38 La.Ann. 885. In this case the Court discussed fully the contents of the deed or act of sale in question, then made the following statements:
"Was Pattison bound to look beyond the authentic conveyance order to maintain his title by prescription? Was there any recital in the deed to put him on notice of any defect in the title of the heirs of Boyle, whereby to deprive him of his good faith at the time he made the purchase?
"For:
"`It is sufficient if the possession has commenced in good faith. R.C.C. 3482.
"`The possessor in good faith is he who has just reason to believe himself master of the thing which he possesses, although he may not be in fact as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.' R.C.C. 3451.
"Under the circumstances above given, had John E. Pattison `just reason to believe himself the master of the property' he purchased on the 26th of January, 1869, from the heirs of Boyle?
"His notarial title did not disclose the defect complained of. It purported to convey a full title, and the act was translative of property. It was a just title. It was a title which he received from a person whom he honestly believed to be the real owner, and the title was such as to transfer the ownership of the property. R.C.C. 3484.
"He had employed a lawyer to examine it, and he reported it good. He had not then nor has he since heard the title questioned.
* * * * * *
"`Good faith purifies the title of its defects and causes the possessor under a just title to be preferred to the true proprietor, who has remained so long neglectful of his rights.' McClo[u]skey v. Webb, 4 R[ob.] 205.
"`There is no defect stamped on the face of the deed, and that is what this Court say was meant by valid form in a deed which would enable a holder under it to prescribe. Carrel's Heirs v. Cabaret, 7 Mart.(O.S.) 406. A possessor cannot be deprived of the right of pleading prescription because he might by inquiry and careful examination discover that his vendor had no title. Frique v. Hopkins, 4 Mart., N.S., 224.' Giddens v. Mobley, 37 [La.]Ann. [417], 419; Barrow v. Wilson, 38 [La.] Ann. 209.
"In Hall & Turner v. Mooring, 27 [La.]Ann. [596], 597, the Court say:

*540 "`The defendant's title is apparently perfect. * * * The defect complained of is dehors both acts. It is well settled that to become the basis of prescription the title must be apparently good and of a kind calculated to induce a belief in the possessor that it is perfect. A title defective in form cannot be the basis of prescription. By this the law means a title on the face of which some defect appears, and not one that may be found defective by circumstances or evidence dehors the instrument.'
"Again:
"`There can be no greater obligation on the vendee to examine the verity of the statement in the written mandate of Wright than to inquire into the truth of the assertion of the seller that he is the owner. In both it could be an error of fact, which the law would not consider of such a nature as to prevent the party from pleading prescription.
"`The rule is that when the opinion of the possessor who holds an object under a title of sale has a just ground, though in fact there is no sale, the opinion is equal to title.'
"In 16 Pet. (U.S.) [455], 489 (10 L.Ed. 1029) Harpending v. Dutch Church, the Court said:
"`One tenant in common may well hold adversely to and bar his cotenant.' 5 Whar[ea]t. (U.S.) 116 (5 L.Ed. 46), McClung v. Ross.
"In 5 Pet.(U.S.) 402 (8 L.Ed. 170) [Jackson ex dem] Bradstreet v. Huntingd[t]on, the Supreme Court said:
"`If parties, having only an equitable right to land, undertake to convey the fee; or, if one tenant in common undertakes to convey the whole, and the granter enter into the actual possession, intending to claim the whole, he is not precluded from setting up his possession thus acquired as a bar under the statute of limitations, nor from relying on it as preventing a conveyance by the owner out of possession.'
"The questions propounded are answered. The plaintiff's title by prescription is perfect and complete. The judgment appealed from is erroneous."
In the case of Francoise v. Delaronde, 8 Mart., O.S., 619, the court held that a sale by a tutrix of a minor's property, without a compliance with the legal formalities, is not a just title. In this case, however, the acquisition of the possessorvendee, that is the title by which he acquired, showed this defect on its face. The defect was apparent and contained in the act of transfer.
Also in the case of McCluskey v. Webb, 4 Rob. 201, which is cited as authority for the holding in Hicks v. Hughes, supra, wherein it was held that the sale under attack to the vendee-possessor was an absolute nullity by virtue of the failure to accompany the application for the sale by a statement of the debts of the succession which was mandatory before the Clerk of Court could legally sign such order, therefore, being an absolute nullity it could not be a just title and serve as the basis of ten years acquisitive prescription, and the court went on to quote Article 3483, the court held that the vendee being a deputy sheriff and purchasing the property in question at the sale by the sheriff, and being prohibited specifically by law from doing so was not in good faith. The court further stated in the McCluskey case that this deputy sheriff "acquired as in the present case in violation of a prohibitory law. In such case he knows the vices of his title as much as if it were a defect of form apparent on its face, for he cannot plead ignorance of the law." Therefore, on the face of Webb's title it was defective in that it was not a just title nor was he in good faith in the face of the prohibitory law.
*541 In Boudreaux v. Olin Industries, supra, the case of McCluskey v. Webb, supra, is cited in the footnote as supporting the decision in Hicks v. Hughes, supra. Also cited in this case (Boudreaux v. Olin Industries, supra) is the case of Clayton v. Rickerson, 160 La. 771, 107 So. 569, 570. In this case the Supreme Court of Louisiana stated:
"The land in controversy was sold in the succession of John Chapman at public auction to John Boyet, then administrator, on January 28, 1879, and was conveyed by him to William B. Parham on January 24, 1881.
"The same property was acquired by Miss Sissie Parham from the heirs of William B. Parham by act of sale of date _____ day of December, 1903.
"J. A. Rickerson, defendant herein, purchased this property from Miss Sissie Parham for a cash consideration of $200 on December 31, 1904.
"Defendant has pleaded the prescription of 10 years' acquirendi causa. This plea was maintained by the trial judge, and plaintiffs' demands were rejected.
"The contention of plaintiffs that the deed from Boyet to Parham was a nullity, and therefore conveyed no title under the law prohibiting an administrator from purchasing at his own sale, is without merit, as defendant claims title as a vendee in good faith by the prescription of 10 years.
"It is immaterial whether Boyet's title to this property was a nullity, or whether he had any title at all. It is likewise unimportant that the title transferred by the heirs of William B. Parham to Sissie Parham may have been defective upon its face. Even if Boyet and the heirs of William B. Parham were in bad faith, it is well settled by the textual provision of the Civil Code and the decisions of this court that:
"`When the vendor assumes to sell without title, or a disclosure of the defects in his title, the vendee in good faith, though holding a non domino, may plead the prescription of ten years.'
"`But the case is different, where the vendor sells only his right, title, and interest, and declines to give a general warranty, and sets out or shows the kind of claim, title, or interest he conveys, and brings home to his vendee a knowledge of his title.'
"`It is well settled, that to become the basis of that prescription the title must be apparently good, and of a kind calculated to induce belief in the possessor that it is perfect.'
"A title, defective in point of form, cannot be a basis for prescription. By this, the law means a title on the face of which some defect appears, and not one that may be proved defective by circumstances, or evidence dehors the instrument.
"Moses Eastman v. Jacob Beiller, 3 Rob. 220; Carrel's Heirs v. Cabaret, 7 Mart.(O.S.) 403; Fort v. Metayer, 10 Mart.(O.S.) 436; Frique v. Hopkins, 4 Mart.(N.S.) 213; Morand's Heirs v. Mayor, etc., of New Orleans, 5 La. 240; Reeves v. Towles, 10 La. 276; Avery v. Allain, 11 Rob. 436; Read v. Hewitt, 120 La. [288] 291, 45 So. 143.
"The sale from Boyet to William B. Parham, of date January 24, 1881, is made by Boyet in his individual capacity, with full warranty of title, for a consideration of $250, and shows no defect upon its face.
"The sale from Miss Sissie Parham to defendant, of date December 31, 1904, is made with full warranty of *542 title, for a cash consideration of $200, and is without apparent defect. Two of the essential elements of prescription are:
"`(1) Good faith on the part of the possessor. (2) A title which shall be legal, and sufficient to transfer the property.' R.C.C. art. 3479.
"`Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.' R.C.C. art. 3481.
"`The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.' R.C.C. art. 3451.
"`By the term just title, in case of prescription, we do not understand that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership.' R.C.C. art. 3484.
"`And in this case, by the phrase transfer of the ownership of the property, we understand not such a title as shall have really transferred the ownership of the property, but a title which by its nature, would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owners, such as a sale, exchange, legacy or donation.' R.C.C. art. 3485.
"As the testimony in this case shows clearly that defendant had been in the actual, continuous, and uninterrupted possession of this property, for more than 10 years prior to the institution of this suit, as a purchaser in good faith, under a title translative of property and without defect upon its face, it necessarily follows that the plea of prescription must prevail and be maintained."
Thus we see in this case that the defendant, who was possessor and vendee, was entitled to stand upon his title and to plead the ten years acquisitive prescription provided he had been in actual, continuous and uninterrupted possession for more than ten years prior to the institution of the suit as a purchaser in good faith under a title translative of property and without defect upon its face. The Court specifically held that even though the possessor-vendee acquires from a vendor who has no title or whose title is a nullity, if the instrument through which he acquired meets the requirements set forth in the articles of our code and if he is in good faith and holds the property in actual, continuous and uninterrupted possession for ten years, his plea of acquisitive prescription is valid.
In the case of Leverett v. Loeb, 117 La. 310, 41 So. 584, the court was confronted with a petitory action in which a plea of ten years acquisitive prescription was plead as a defense. The Court said:
"The effect of the prescription is, however, to establish as valid the title of the defendant, provided that title be `just,' and whether it be just or not depends upon the title itself, and the circumstances under which it may have been acquired and held, and not necessarily upon the title of its supposed author * * *".
A case very similar as far as the facts are concerned is Sicard v. Schwab, 112 La. 475, 36 So. 500, in which the court stated the facts to be as follows:
"Plaintiffs claim to be owners of an undivided six-sevenths of certain lands described in their petition.

*543 "The land was acquired by F. M. Sicard, father of plaintiffs, on the 30th day of June, 1856.
"It was owned by him at the date of his death on the 20th day of February, 1885. His widow went into possession of this property (after her husband's death) as widow in community, and as usufructuary of his interest in the property, and remained in possession to the date of her death. The succession of the father was never opened for settlement. Plaintiffs, in the proportion of six-sevenths, and Mrs. Schwab, defendant's wife, of one-seventh, fell heirs to the whole property after the death of their mother.
"The property had been sold for taxes assessed in the name of F. M. Sicard. In due time the purchasers at this tax sale were paid, and signed a deed in which it was declared that the property was returned to the possession of Mrs. Sicard, plaintiff's mother. The defendant Nicholas Schwab acted as the agent of his mother-in-law in redeeming the property which had been sold for taxes.
"After the death of the mother of plaintiffs and of Mrs. Schwab, the property was all inventoried in her succession, and no mention was made of the father as owner of one-half of the property.
"Aaron Baum became the administrator of the succession. On his application an order was obtained, after notice had been given to the heirs, to sell the property to pay debts.
"The property was sold at public auction, and at this sale Nicholas Schwab became the adjudicatee. Not only the half formerly owned by Mrs. Sicard was sold at this sale, but also the half of the late Mr. Sicard. As relates to the latter half of Mr. Sicard, his ownership was passed over without any mention whatever, and it was sold as if it had been owned by the late Mrs. Sicard in her own right.
"Some time after the sale, Baum, administrator, filed a final account, which was advertised, and in due time it was approved by a judgment of the court, and the administrator was discharged, and his bond canceled."
It is shown that the defendants plead the prescription of five and ten years. The plea of five years prescription was maintained to the extent that the property of Mrs. Sicard was involved, and the ten year plea of prescription as related to the half of the property of the father, F. M. Sicard, was referred to the merits.
The court, in passing on these pleas of prescription, said:
"We take up, in the first place, for decision, the claim of plaintiffs to the portion of the land in question inherited from their mother, Mrs. Sicard.
"The sale as to this half is valid.
"With reference to defendant's plea of prescription as to Mrs. Sicard's interest, the said half, we think it should be sustained."
The court was referred to the five year period of prescription plead.
As to the sale of the father's half interest and the plea of ten years prescription made by the defendants, the court stated:
"The sale as to the remaining half is null for the following reasons:
"The administrator's account as administrator of the succession of Mrs. Sicard shows that the creditors were creditors of her succession, and not of the succession of F. M. Sicard.
"They, as creditors, and the administrator, who was primarily their representative, were without right to bring about the sale of the succession property *544 of Mr. Sicard, deceased, to pay the debts of the late Mrs. Sicard. No proceedings could thus divest plaintiffs of their half of their father's succession.
"It was the sale of the property of another than that of the one whose succession was in course of settlement, and therefore null.
"The sale of a thing belonging to another is null. It does not operate as a transfer of the property to the prejudice of the owner. The purchaser cannot be considered in good faith. He knew to whom the property belonged.
"The sale of property of another is null. 24 Laurent, No. 100 et seq.
* * * * * *
"* * * We agree with Toullier, loco citato, that all that the law has done in favor of a purchaser in good faith is to give him the benefit of the prescription of ten and twenty years, though the property so purchased may belong to another person. Civ.Code, arts. 3442, 3450, and 3451 * * *.
* * * * * *
"The sale of the property under which defendant became the owner was not made 10 years prior to suit. The 10 years had not quite elapsed; therefore the 10-years prescription pleaded is not sustained."
Thus we see a case practically on all fours as far as the facts are concerned in that the property of the plaintiffs inherited through their father was sold as the property of the wife. In the Sicard case, of course, the sale was the result of an administration of the succession of the wife, whereas in the case at bar the sale was made under an order of seizure and sale. However, in the Sicard case, it is to be noted that although the court held the sale to be null it considered a plea of ten years acquisitive prescription.
In the Louisiana Law Review, Vol. 14, p. 132, is an article under the work of the Supreme Court on the subject of prescription by Professor Joseph Dainow, of the Louisiana State University School of Law, we find the following statement with regard to the case of Hicks v. Hughes, supra:
"In another aspect of the Hicks case, the court upheld that, since the purported sale was an absolute nullity, it could not be a `just title' for the ten year acquisitive prescription. Under the facts of this case, the defect was one which must be consideredin the light of existing lawas patent on the face of the title."
We did not find in the Hicks case where the court definitely stated whether or not absolute nullity upon which it stated that such a title could not be a just title nor serve as the basis for the ten year acquisitive prescription was patent upon the face of the possessor's-vendee Hicks' title. We presume that it was in view of the long line of prior jurisprudence as well as current jurisprudence, holding that the question of a just title upon the four corners of the vendee-possessor's deed, or his authors in title if necessary to tack on possession in order to fulfill the ten year requirement.
As appears from the above discussion, the just title provisions of LSA-Civil Code, Articles 3474 and 3483, are at issue here. From the codal provisions and the jurisprudence on this point the following rule may be drawn: an absolute nullity affecting a transfer of immovable property, but not appearing on the face of the title itself, does not prevent the running of ten years prescription acquirendi causa, provided the other requisites of such prescription are present.
In accordance with the established jurisprudence heretofore discussed it is necessary that we examine the deed whereby the defendant-vendee and possessor *545 acquired the property in question at the sheriff's sale on the 28th day of November, 1925. The sheriff's deed in the record shows that the Sheriff of the Parish of Lafourche, acting under and by virtue of a writ of fieri facias which issued out of the 17th Judicial District Court from the Parish of Lafourche, State of Louisiana, dated September 30, 1925, in the cause of Joseph O. Authement v. Mrs. Marie Gaude, widow of Joseph Callahan, seized on the 5th day of October, 1925, the property in question.
The deed then states "On the following terms and conditions, to-wit: * * * to satisfy a judgment rendered against the said Mrs. Marie Gaude Callahan on September 14, 1925, in favor of the plaintiff."
The deed then fulfills all requirements of the law with regard to a statement of the necessary preliminaries and acts done by the Sheriff such as due legal notice of the seizure to the heirs, the advertisement for more than thirty days in the Thibodeaux Commercial Journal, a weekly newspaper printed and published in the town of Thibodeaux, Parish of Lafourche, notice in writing to the parties as well as to the plaintiffs to point each an appraiser, and after having complied with and performed all the prerequisites of the law, the sheriff on the 28th day of November, 1925, repaired to the premises and proceeded to offer for sale the property in question at public auction, in the presence of witnesses who signed the deed and numerous bystanders by first reading in a loud and audible voice the writ of fi. fa., and the advertisement, and the certificates of mortgage granted by the Clerk of Court, in and for the Parish of Lafourche. The deed then states that he proceeded to offer the property at public auction and it was "knocked off and adjudicated to Joseph O. Authement," who was the last and highest bidder. This deed then states: "Now, therefore, know all men by these presents, that I, Thomas Stark, Sheriff of the Parish of Lafourche, in consideration of the premises and by virtue of the power vested in me by the laws of the State of Louisiana, in such cases made and provided, do hereby sell, set over, transfer and convey to and unto the said Joseph O. Authement his heirs and assigns, all the rights, titles and interest and claims which the said Mrs. Heloise Callahan, wife of Leufroid Pitre, Mrs. Helen Callahan, wife of Eugene Danos; Constant Callahan; Louis Callahan; Joseph Callahan; Leon Callahan; Mrs. Josephine Callahan, wife of Ambroise Gaude; Antoine Callahan; Mrs. Marie Callahan, wife of Edward Collin; Hays, Hazel and Lorine Callahan, minors, and Pierre Lorice, alias Lorice Callahan, had in and to the above described property, to have and to hold the same in true and perfect ownership."
It is therefore clear, on the face of this deed, from the recitations of its contents as above briefly outlined, that the sheriff, although he received an order of seizure and sale for the property of Mrs. Marie Gaude, widow of Joseph Callahan, the mother of most of the plaintiffs and grandmother of several of them to satisfy a judgment rendered against Mrs. Marie Gaude Callahan in favor of the plaintiffs, that the sheriff sold all the right, title and interest and claims of the plaintiffs rather than of the judgment debtor. The sheriff was completely without authority to sell the rights, titles and interests and claims of these plaintiffs when on the face of the title he was ordered to seize and sell only the property in question belonging to the widow and debtor, Mrs. Marie Gaude Callahan. We therefore hold that the defendant-vendee-possessor does not have a just title as the title by which he obtained the property in question is defective on its face.
It is not necessary that we pass upon the question of the good faith of the defendant, however, defendant has also plead estoppel. Our courts have had occasion to pass upon the plea of estoppel in suits involving land many times. Among these is the case of Snelling v. Adair, 196 La. 624, 199 So. 782, 786, in which the court held:

*546 "The pleas of estoppel, ratification, and acquiescence, which are based on the long silence and inaction of the plaintiff and her ancestor, are equally unimpressive, for one can never be divested of his title, to property except in the manner prescribed by law. Pearce v. Ford, 124 La. 851, 50 So. 771; Long v. Chailan, 187 La. 507, 175 So. 42; and Gibson v. Pickens, 187 La. 860, 175 So. 600."
Again in the case of Sun Oil Co. v. Smith, 216 La. 27, 43 So.2d 148, 153, it was held:
"To hold that the Hunter children had, by virtue of their long silence and acquiescence, ratified this partition, in which their mother was not represented and not allotted a share of the property, would, in legal effect, be holding that S. M. Smith acquired this interest, and these heirs have been divested thereof, by estoppel, which we cannot do under the jurisprudence of this state. Snelling v. Adair, supra; Pan American Production Co. v. Robichaux, 200 La. 666, 8 So.2d 635."
Another case involving a plea of estoppel is Juneau v. Laborde, 219 La. 921, 54 So.2d 325, 329, in which the Court stated:
"Defendant's plea of estoppel, reurged here, is also without merit. Plaintiffs did nothing to mislead defendant to his prejudice. And it is well established that mere silence and delay cannot cause a loss of title to property except by effect of the laws of prescription. Pearce v. Ford, 124 La. 851, 50 So. 771; Long v. Chailan, 187 La. 507, 175 So. 42."
Counsel for defendant, on the question of estoppel or laches, argues that it has been uniformly held in our jurisprudence that one who stands by and sees his property sold as that of another, cannot set up his title against one purchasing bona fide on the faith of his acknowledgement or tacit acquiescence. Silence is sometimes as binding and expressive as positive consent.
Plaintiff in support of his plea of estoppel cites many cases among which is the case of Alexander v. Bourdier, 43 La.Ann. 321, 8 So. 876, 878. In this case the defendants filed an estoppel to any claim of the heirs of T. S. Alexander (plaintiffs) to any portion of the said plantation, because of the several acts and declarations and silence of their father in relation to the sale of said property; said acts and conduct being of that character which induced the plaintiffs to believe that he had no interest in the plantation, and they were thereafter estopped from disputing the title of plaintiff. As to this plea the court stated:
"* * * Theodore S. Alexander evidently construed the effect of the first sale as having divested him of all title or interest in said plantation. He was the uncle of Mrs. Louise M. Richardson. After the two sales and the final adjudication of the property to her, she went into possession of the whole place. Theodore Alexander acted as her agent, collected rents for her, and accounted to her husband for the same. He permitted the entire property to be assessed in her name for six years. She paid the taxes on the plantation during this time. At her death he permitted it to be inventoried as her property, and made no opposition to its sale as a part of her succession effects. Before leaving the premises, he delivered certain plats or maps of the plantation to the defendants as part of the muniments of title to the property. These several acts of the plaintiffs' father, and his silence for so many years, permitting the property to be sold under several decrees, without asserting title, effectually estop them from claiming title to any part of said Waveland plantation. Marsh v. Smith, 5 Rob. (La.) 518; Lippmins v. McCranie, 30 La.Ann. 1251. * * *"
Plaintiff also cites the case of Sicard v. Schwab, supra [112 La. 475, 36 So. 502], *547 which has been previously discussed but not on the point of estoppel. In this case the court stated:
"With reference to estoppel urged as against Charles Sicard, one of the heirs of Mrs. L. Sicard, and one of the plaintiffs, it has no application here, for defendant was not a third person; or at any rate he knew all about the facts, and was not influenced by the plaintiffs. Eng. & Amer. Ency. of Law, vol. 11, pp. 431, 432.
"`It may be stated as a general rule that it is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another to his injury was himself not only destitute of knowledge of the state of facts, but was also destitute of any convenient and available means of acquiring such knowledge; and that, where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel.' Encyclopaedia just cited (2d Ed.) p. 434."
Counsel also cites a decision of this court, viz., Stafford v. Sumrall, La.App., 21 So.2d 83, in which the court stated that a plea of estoppel might well be sustained but in view of the strong preponderance of the testimony in favor of defendants on the merits, the decision of the case and the resulting title to the property need not rest on that ground. The question involved in this case was whether the property was separate or community and subject to seizure or execution under a judgment against the husband.
We do not think the cases cited by defendant in support of his plea of estoppel are apposite for the facts are different in the main. In the case at bar the plaintiffs did nothing personally to mislead or influence the defendant. They do not appear to be educated people but on the contrary illiterate. Their father was unable to write and possibly to read. Whether the plaintiffs in this case can read and write is not shown by the record, but we feel confident that they did not realize or know the full import of the erroneous citation which contained the notice of the seizure of their rights in the property. They, of course, knew that the defendant held a judgment against their mother. On the other hand, the defendant was born in 1885 and he lived within a mile and a half of this property and he knew the father and mother of the plaintiffs and he also knew that they raised their ten children on this property and lived on this property as man and wife. The defendant was also a notary public and from his testimony he was very conscious of the difference in community and separate property, and he was also fully conscious of the fact that his judgment which he had purchased from an in-law was against Mrs. Callahan only. It is logical to believe from the facts in this case that the defendant, an educated man and a Notary Public and with full knowledge of the difference in community and separate property as shown by his testimony on the witness stand and with full knowledge acquired from living within a mile and a half of the mother and father of these plaintiffs, knew that they lived on this property as their home, farmed, raised their family of ten children and that the father died leaving the mother and the children and that judgment was obtained against the mother only, which he in turn purchased and which was ordered executed against any interest or property of the mother, Mrs. Marie Gaude Callahan, and that the said judgment was limited to Mrs. Callahan's interest only.
We do not find or believe that the plaintiffs did anything to mislead defendant or have committed any acts which would estop them in this case. On the contrary, we believe that the defendant was probably fully aware of the legal effects flowing from the facts within his personal knowledge. The plea of estoppel is overruled.
While the plaintiffs pray for a full and complete accounting of all rents, revenues, *548 products and fruits derived by defendant from the property, the testimony fails to show with sufficient certainty what the revenues were and no where are the expenses mentioned. For this reason we cannot arrive at a definite conclusion so as to form the basis of a judgment and for that reason this prayer will be denied.
For the above and foregoing reasons it is ordered, adjudged and decreed that there be judgment in favor of the plaintiffs herein and against the defendant, recognizing the plaintiffs as the owners of an undivided one-half interest in and to the following described property by inheritance from Joseph Callahan:
"A certain tract of land situated on the left bank of Bayou Lafourche, about forty-three (43) miles below the Town of Thibodaux, measuring two and one third (2 1/3) arpents front on said Bayou Lafourche by a depth of forty (40) arpents; bounded above by land of Raphael Gaude, now or formally and bounded below by land of Simon Abraham now or formerly, together with all improvements thereon, rights, ways, privileges, advantages, and servitudes attached thereto and belonging,"
in the following proportions, to-wit:

 1. Heloise Callahan Pitre1/20
 2. Emile Constant Callahan1/20
 3. Louis P. Callahan1/20
 4. Joseph T. Callahan1/20
 5. Leon A. Callahan1/20
 6. Pierre Lauris Callahan1/20
 7. Josephine Callahan Gaude1/20
 8. Antoine B. Callahan1/20
 9. Rose Danos Savoie1/160
10. Adrien M. Danos1/160
11. Joseph P. Danos1/160
12. Louise Danos Rebstock1/160
13. Eugenie Alzire Danoe1/160
14. Georgina Danos Eymard1/160
15. Albruge Danos1/160
16. Athose A. Danos1/160
17. Marie Callahan Collin1/180
18. Eade J. Callahan1/80
19. Esa (alias "Hazel") Callahan Terrebonne1/80
20. Laurine Callahan1/80

It is further ordered, adjudged and decreed that the defendant pay all costs.